**SQUIRE PATTON BOGGS (US) LLP**
Yamili F. Gonzalez (State Bar # 327820)
yamili.gonzalez@squirepb.com
555 South Flower Street, 31st Floor
Los Angeles, CA 90071
Telephone: +1 213 689 6540
Facsimile: +1 213 623 4581

Kristin L. Bryan (admitted *pro hac vice*)
kristin.bryan@squirepb.com
1120 Avenue of the Americas, 13th Floor
New York, NY 10036
Telephone: +1 212 872 9800
Facsimile: +1 212 872 9815

*Attorneys for Defendant SPD Swiss Precision Diagnostics GmbH*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROZ SAEDI, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPD SWISS PRECISION DIAGNOSTICS GMBH,<br><br>Defendant. | Case No. 2:24-cv-6525-WLH-E<br><br>**DEFENDANT SPD SWISS PRECISION DIAGNOSTICS GMBH'S NOTICE OF MOTION AND RULE 12(B)(6) MOTION TO DISMISS**<br><br>[Proposed Order filed concurrently herewith]<br><br>Judge: Hon. Wesley L. Hsu<br><br>Hearing: January 31, 2025 |

**TO THE HONORABLE COURT, AND TO PLAINTIFF AND HER COUNSEL OF RECORD HEREIN:**

**NOTICE IS HEREBY GIVEN** that on January 31, 2025 at 1:30 p.m. in Courtroom 9B of the above-entitled Court located at First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012, Defendant SPD Swiss Precision Diagnostics GmbH ("SPD") will and hereby does move the Court to dismiss the above-captioned action pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that Plaintiff fails to state a claim against SPD upon which relief can be granted.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, all pleadings, papers and records on file in this Action, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on December 2, 2024.

Dated: December 23, 2024

**SQUIRE PATTON BOGGS (US) LLP**
By: */s/ Kristin L. Bryan*
Kristin L. Bryan

*Attorney for Defendant SPD Swiss Precision Diagnostics GmbH*

# TABLE OF CONTENTS


Table of Authorities ........ iv

I. Introduction ........ 1

II. Background ........ 3

A. The Website ........ 3

B. The Alleged Tracking Tools ........ 5

C. Plaintiff's Website Visit ........ 6

D. Procedural Background ........ 6

III. Legal Standard ........ 7

IV. Argument ........ 8

A. Plaintiff's Claim For Violation Of ECPA Fails. ........ 8

1. SPD Was A Party To Any Communications And Therefore Exempt From Liability. ........ 8

2. Plaintiff Fails To Plausibly Allege That The Crime-Tort Exception Applies ........ 12

B. Plaintiff's Claim For Violation Of The California Invasion Of Privacy Act Fails. ........ 17

1. The CIPA Claim Was Brought Outside the Statute of Limitations. ........ 17

2. Plaintiff Has Failed To Plead The Requisite Scienter For An Aiding and Abetting Claim. ........ 21

C. Plaintiff's Invasion Of Privacy Claim Fails. ........ 23

D. Plaintiff's Unjust Enrichment Claim Fails ........ 27

V. Conclusion ........ 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.S. v. SelectQuote Ins. Servs.*,
No. 3:23-cv-02258-RBM-MSB, 2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) .......... 3, 4, 8

*Allen v. Novant Health, Inc.*,
No. 1:22-cv-00697, 2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) .......... 10, 24

*In re Apple Processor Litig.*,
No. 18-cv-00147-EJD, 2022 WL 2064975 (N.D. Cal. June 8, 2022) .......... 27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 7, 8

*B.K. v. Eisenhower Med. Ctr.*,
No. 23-cv-02092-JGB, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) .......... 13, 14

*B.K. v. Eisenhower Medical Center*,
721 F.Supp.3d 1056 (C.D. Cal. 2024) .......... 10, 13, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 7, 8

*City of Oakland v. The Oakland Raiders*,
299 Cal.Rptr.3d 463 (Cal. Ct. App. 2022) .......... 27

*Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*,
858 F.2d 499 (9th Cir. 1988) .......... 18

*De Los Reyes v. Ruchman & Assocs., Inc.*,
No. 14-cv-00534-WHO, 2014 WL 4354238 (N.D. Cal. Sept. 2, 2014) .......... 19

*Doe I v. Google LLC*,
No. 23-cv-02431-VC, 2024 WL 3490744 (N.D. Cal. July 22, 2024) .......... 11

*Doe v. Kaiser Foundation Health Plan, Inc.*,
No. 23-cv-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........ 15, 16

*Esparza v. UAG Escondido A1 Inc.*,
No. 23-cv-00102-DMS-KSC, 2024 WL 3761293 (S.D. Cal. Aug. 5, 2024) ........ 22

*Esparza v. UAG Escondido A1 Inc.*,
No. 23-cv-00102-DMS-KSC, 2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ........ 22

*Fox v. Ethicon Endo-Surgery, Inc.*,
110 P.3d 914 (Cal. 2005) ........ 20

*Garcia v. Gen. Motors LLC*,
No. 1:18-cv-01313-LJO-BAM, 2018 WL 6460196 (E.D. Cal. Dec. 10, 2018) ........ 18

*In re Google Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ........ 12

*In re Google, Inc. Gmail Litig.*,
No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ........ 16

*In re Google, Inc. Privacy Policy Litig.*,
58 F.Supp.3d 968 (N.D. Cal. 2014) ........ 7, 25

*Hammerling v. Google LLC*,
615 F.Supp.3d 1069 (N.D. Cal. 2022) ........ 25

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) (Garnett, J.) ........ 23

*Hernandez v. Hillsides, Inc.*,
211 P.3d 1063 (Cal. 2009) ........ 23

*Hill v. Roll Int'l Corp.*,
128 Cal.Rptr.3d 109 (Cal. Ct. App. 2011) ........ 27

*In re iPhone Application Litig.*,
844 F.Supp.2d 1040 (N.D. Cal. 2012) ........ 25

*Javier v. Assurance IQ, LLC*,
649 F.Supp.3d 891 (N.D. Cal. 2023)....17, 18, 20, 21

*Katz-Lacabe v. Oracle America, Inc.*,
No. 22-cv-04792-RS, 2024 WL 1471299 (N.D. Cal. Apr. 3, 2024)....9

*Kurowski v. Rush Sys. for Health*,
659 F.Supp.3d 931 (N.D. Ill. 2023)....10, 23

*Lau v. Gen Digital Inc.*,
No. 22-cv-08981-JST, 2023 WL 10553772 (N.D. Cal. Sept. 13, 2023)....18, 19

*Love v. Ladder Fin., Inc.*,
No. 23-cv-04234-VC, 2024 WL 2104497, . (N.D. Cal. May 8, 2024)....4

*Low v. LinkedIn Corp.*,
900 F.Supp.2d 1010 (N.D. Cal. 2012)....24, 27

*Martin v. Sephora USA, Inc.*,
No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023)....17

*McDonald v. Wells Fargo Bank, N.A.*,
No. 13-cv-02334-KAW, 2013 WL 6512881 (N.D. Cal. Dec. 12, 2013)....7

*In re Meta Pixel Healthcare Litig.*,
647 F.Supp.3d 778 (N.D. Cal. 2022)....16

*Okash v. Essentia Health*,
No. 23-482, 2024 WL 1285779 (D. Minn Mar. 26, 2024)....15

*Pena v. GameStop, Inc.*,
670 F.Supp.3d 1112 (S.D. Cal. 2023)....10, 12

*R.C. v. Walgreen Co.*,
No. 5:23-cv-01933-JGB-SP, 2024 WL 2263395 (C.D. Cal. May 9, 2024)....26

*R.S. v. Prime Healthcare Services, Inc.*,
No. 5:24-cv-00330-ODW, 2024 WL 3730609 (C.D. Cal. Aug. 7, 2024)....11

*Robinson v. HSBC Bank USA*,
732 F.Supp.2d 976 (N.D. Cal. 2010)....27

*Rodriguez v. Ford Motor Co.*,
722 F.Supp.3d 1104 (S.D. Cal. 2024)....22

*Roe v. Amgen Inc.*,
No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024)....10, 11

*Ruiz v. Gap, Inc.*,
540 F.Supp.2d 1121 (N.D. Cal. 2008), *aff'd*, 380 F.App'x. 689 (9th Cir. 2020)....25

*Saunders v. Superior Court*,
33 Cal.Rptr.2d 438 (Cal. Ct. App. 1994)....22

*Sepanossian v. National Ready Mix Company, Inc.*,
315 Cal.Rptr.3d 373 (Cal. Ct. App. 2023)....27

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020)....27

*Sporer v. UAL Corp.*,
No. 08-cv-02835-JSW, 2009 WL 2761329 (N.D. Cal. Aug. 27, 2009)....9

*Steinberg v. CVS Caremark Corp., et al.*,
899 F.Supp.2d 331 (E.D. Pa. 2012)....24

*T.D. v. Piedmont Healthcare, Inc.*,
No. 1:23-cv-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024)....9

*Williams v. TMC Health*,
No. 23-cv-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024)....23, 24

**Statutes**

Cal. Civ. Proc. Code § 340(a)....17

California Invasion of Privacy Act, Cal. Penal Code § 631(a)....*passim*

Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d-6 .......... 12–16

Wiretap Act of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1) *et seq.* .......... *passim*

**Court Rules**

Fed. R. Civ. P. 12(b)(6) .......... 1, 3, 7

Fed. R. Civ. P. 41(a)(1) .......... 7

Fed. R. Evid. 201 .......... 8

**Other Authorities**

45 C.F.R. § 160.102 .......... 13

Defendant SPD Swiss Precision Diagnostics GmbH ("SPD"), through its attorneys, respectfully moves the Court for an order under Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing Plaintiff Roz Saedi ("Plaintiff")'s Complaint with prejudice.

## I. <u>INTRODUCTION</u>

SPD Swiss Precision Diagnostics GmbH is a leading supplier of home pregnancy tests, ovulation tests, and fertility monitors, and owner of the registered trademark "Clearblue." SPD's Clearblue website has a privacy policy explaining to visitors that its website uses tracking technologies like cookies and may share information to advertisers like Facebook and Google. SPD's website also uses a pop-up cookie banner which allows a visitor to the website to grant or deny consent to tracking technologies. Since March 2024, SPD's website has included a supplemental health data privacy policy. Plaintiff allegedly visited SPD's website in 2022, looked up a Clearblue product, and afterward received targeted ads. Plaintiff has not alleged that she suffered any harm from these ads, nor that she has suffered any actual damages all. Now, over a year later, Plaintiff alleges that this routine website visit and the presence of ubiquitous, disclosed, and consented-to technologies on SPD's website constitutes state and federal crimes of wiretapping, among other claims. This Court should reject Plaintiff's attempt to analogize website visits with wiretaps and dismiss the Complaint with prejudice for the following reasons:

***First***, Count I for violation of the Wiretap Act of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1) *et seq.* ("ECPA") should be dismissed because Plaintiff alleges that SPD "intercepted" communications from Plaintiff to SPD. Courts have repeatedly held that a party cannot intercept its own communications under ECPA. Plaintiff's citation of additional privacy-related laws and regulatory actions does not satisfy ECPA's crime-tort exception because Plaintiff fails to state a claim for a violation of those other laws and regulations, the alleged violation of ECPA is not separate from those other asserted violations, and Plaintiff alleges that SPD had a proper purpose.

***Second***, Count II for violation of Section 631(a) of the California Invasion of Privacy Act, Cal. Penal Code § 631(a) ("CIPA") should be dismissed because it is brought well outside CIPA's one-year statute of limitations, as clear on the face of the Complaint, and Plaintiff fails to plead sufficient facts to support tolling. Moreover, Plaintiff fails to plausibly allege that SPD had knowledge that any other party was violating CIPA.

***Finally***, Plaintiff's common law claims should be dismissed. Count III for intrusion upon seclusion fails because Plaintiff has not plausibly alleged an "intrusion," let alone one that was "highly offensive." Count IV for unjust enrichment is also deficient because California law does not recognize unjust enrichment as an independent cause of action, but rather as a claim for equitable restitution. Plaintiff has not alleged that that monetary and other remedies at law are

inadequate as required for an equitable restitution claim to survive a motion to dismiss.

Thus, the Court should dismiss the Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. <u>BACKGROUND</u>

### A. The Website

SPD Swiss Precision Diagnostics GmbH is a leading supplier of home pregnancy tests, ovulation tests, and fertility monitors and owner of the trademark "Clearblue". SPD, for its brand Clearblue, operates the website https://www.clearblue.com (the "Website"). Compl. ¶ 7. Beyond delivering information about Clearblue products, the Website provides visitors with educational articles and best science available regarding fertility, pregnancy, contraception, and sexual health. *See, e.g.*, Compl. ¶ 72 & Fig. 1 (Website's pregnancy test page provides information for consumer to "find the right test [] or read more about how pregnancy tests work"; link to blog on Website).

SPD's Website has two privacy policies which are implicated by the Complaint's allegations and relevant to this motion to dismiss.[1] At all relevant times,

[1] This Court can consider on a motion to dismiss both the Supplemental Health Privacy Policy and the Privacy Policy, and the date each was made available. *See, e.g.*, *A.S. v. SelectQuote Ins. Servs.*, No. 3:23-cv-02258-RBM-MSB, 2024 WL 3881850, at *4 & n.4 (S.D. Cal. Aug. 19, 2024) (collecting cases considering website privacy policies under judicial notice and incorporation by reference doctrine;

the Website has had a global privacy policy ("Privacy Policy"). The Complaint places at issue SPD's "privacy policy practices," but fails to attach a copy of the Privacy Policy. *See, e.g.*, Compl. ¶ 216(k).[2] Since March 2024, the Website has had a supplemental Consumer Health Data Privacy Policy (the "Supplemental Health Privacy Policy"). Plaintiff's Complaint selectively quotes the Supplemental Health Privacy Policy. *See, e.g.*, Compl. ¶ 33.[3]

SPD's Privacy Policy informs consumers of the types of information that may be "collected by [SPD] and [its] partners on" the Website. Privacy Policy at 1. This includes the visitor's "Screen name," "Health information," information about the visitor's computer—such as [the visitor's] IP Address" and "the type of internet browser"—and "[a]ny other information which might reasonably be used to identify" visitors. *Id.* at 2, 4. The Privacy Policy also explains the methods that

---

considering identified effective date of privacy policy); *Love v. Ladder Fin., Inc.*, No. 23-cv-04234-VC, 2024 WL 2104497, at *2 n.2. (N.D. Cal. May 8, 2024) (considering privacy policy incorporated by reference where "The Complaint quotes selectively from the Privacy Policy"; dismissing CIPA and common law invasion of privacy claims). Notably, Plaintiff's Complaint references the Website, quotes part of the Supplemental Health Privacy Policy, and places at issue SPD's "privacy policy practices." *See* Compl. ¶¶ 32–35, 121, 216(c), (j), (k); *see also A.S. v. SelectQuote*, 2024 WL 3881850, at *3 (holding "a website's privacy policy" is incorporated by reference "when the website is referenced in the complaint").

[2] For clarity, copies of SPD's current Privacy Policy and Privacy Policy in effect in September 2022 are attached to the Declaration of James M. Brennan ("Brennan Decl."). *See* Brennan Decl. ¶¶ 3, 5 & Exs. 1, 3.

[3] The full text of the Supplemental Health Privacy Policy, updated April 16, 2024, is attached to the Declaration of James M. Brennan. *See* Brennan Decl., ¶ 8 & Ex. 5.

information may be collected on the Website, including cookies and pixel tags. *Id.* at 3–4. Specifically, the Privacy Policy makes clear to visitors "[SPD] may use cookies to collect information during your visit to this site" and that "[s]ome of the pages you visit ***may also collect information using pixel tags*** *(also called 'clear gifs')* ***that may be shared with partners*** who directly support SPD's promotional activities and site development." *Id.* (emphasis supplied).

**B. The Alleged Tracking Tools**

When a user visits any website, the user's browser makes requests of the computer that hosts the website, and that server responds with files. *See* Compl. ¶¶ 58–63. These responsive files can include the HTML markup files that make the visual appearance of the website, text files known as cookies, and scripts the Complaint refers to as "Source Code". *Id.*

Plaintiff alleges that SPD has configured the Website so that the embedded scripts include three so-called "Tracking Tools": Facebook Pixel, Google Analytics, and Google Tag Manager. *See, e.g.*, Compl. ¶¶ 8, 73, 83, 117.[4] Plaintiff alleges that these Tracking Tools by default are configured so that when a user visits a particular webpage, certain user interactions with the website are recorded. *See* Compl. ¶ 75.

[4] Plaintiff also alleges "upon information and belief" that the Website's servers implement Facebook's Conversions Application Programming Interface ("CAPI"). Compl. ¶¶ 15, 66. As alleged in the Complaint, if a website server uses CAPI, information is sent from the user's browser to the server "before" being collected by CAPI and sent from the website operator to Facebook. Compl. ¶ 65.

As alleged, the Tracking Tools transmit to Facebook (in the case of the Facebook Pixel) the URL of a page the user visits on the Website, along with the respective Facebook cookies. *See* Compl. ¶¶ 98–121. Plaintiff alleges that the Google Tracking Tool works the same way, but also records and transmits the URL of any link a user clicks on the Website. *See* Compl. ¶¶ 118–121. Plaintiff does not allege that the Tracking Tools transmit any other website "communications" other than URLs. *See generally* Compl. ¶¶ 98–121. The Facebook and Google cookies allegedly include IDs which can identify a user. *See* Compl. ¶¶ 91–92, 108.

### C. Plaintiff's Website Visit

Plaintiff alleges she is a citizen of the State of California. Compl. ¶ 38. On September 29, 2022, Plaintiff purportedly viewed a product on the Website and used the "Buy Now" link to purchase the product on Amazon. *Id.* ¶¶ 187, 189. She also alleges having active Facebook and Google accounts at that time. *Id.* ¶¶ 190–91. The only "communication" Plaintiff alleges was sent to Facebook and Google are three URLs of pages she visited on the Website. *Id.* ¶ 192. According to Plaintiff, "[f]ollowing her visits to [the Website], Plaintiff observed advertisements on her Facebook account related to the products she sought and received through webpages she viewed and accessed on [the Website]." *Id.* ¶ 199.

### D. Procedural Background

Plaintiff filed her Complaint on August 1, 2024. Plaintiff's Complaint asserts four causes of action on behalf of Plaintiff and other individuals similarly situated:

(1) violation of ECPA, (2) violation of CIPA, (3) "common law invasion of privacy—intrusion upon seclusion", and (4) "unjust enrichment". Plaintiff's Complaint asserted these causes of action against SPD as well as the The Procter & Gamble Company ("P&G") and Abbott Laboratories ("Abbott"). On October 24, 2024, Plaintiff voluntarily dismissed her claims against P&G and Abbott without prejudice pursuant to Fed. R. Civ. P. 41(a)(1) and a stipulation between Plaintiff, SPD, P&G, and Abbott. *See* ECF Nos. 39–40.

## III. <u>LEGAL STANDARD</u>

Under Rule 12(b)(6), a party may move to dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts, however, "need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Google, Inc. Privacy Policy Litig.*, 58 F.Supp.3d 968, 977 (N.D. Cal. 2014) (dismissing invasion of privacy claim). "The court need not accept as true allegations that contradict facts which may be judicially noticed." *McDonald v. Wells Fargo Bank, N.A.*, No. 13-cv-02334-KAW, 2013 WL 6512881, at *3 (N.D. Cal. Dec. 12, 2013) (citation omitted) (dismissing complaint with prejudice).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 677 (quoting *Twombly*, 550 U.S. at 556). On a motion to dismiss, a court may consider material outside the complaint if "the material [1] is incorporated into the complaint by reference or [2] is subject to judicial notice under Federal Rule of Evidence 201." *A.S. v. SelectQuote*, 2024 WL 3881850, at *3 (considering privacy policy on defendant's website as incorporated by reference and subject to judicial notice).

## IV. <u>ARGUMENT</u>

### A. Plaintiff's Claim For Violation Of ECPA Fails.

#### 1. SPD Was A Party To Any Communications And Therefore Exempt From Liability.

The Complaint fails to plead a cognizable ECPA claim. ECPA prohibits the intentional interception of an electronic communication, as well as the disclosure or use of the contents of the communication, if known, or there was reason to know, that the communication was intercepted in violation of the statute. *See* 18 U.S.C. § 2511(1)(a)–(e). The statute, however, specifically exempts from liability any alleged

interceptor who "is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.* § 2511(2)(d). Courts have held that "Congress intended the consent requirement to be construed broadly." *Sporer v. UAL Corp.*, No. 08-cv-02835-JSW, 2009 WL 2761329, at *5 (N.D. Cal. Aug. 27, 2009) (quotation omitted).

Consistent with this framework, a defendant that controls a website and installs or permits tracking technologies on that website is exempt from liability under ECPA. Here, Plaintiff asserts that SPD "own[s] and control[s]" the Website and "installed third-party tracking technologies." *See* Compl. ¶¶ 7–8. The only reasonable inference from these allegations is that SPD consented to the purported interception of communications. *See, e.g.*, *Katz-Lacabe v. Oracle America, Inc.*, No. 22-cv-04792-RS, 2024 WL 1471299, at *4 (N.D. Cal. Apr. 3, 2024) (dismissing ECPA claim because the websites that deployed defendant's tracking technologies consented to the interceptions); *T.D. v. Piedmont Healthcare, Inc.*, No. 1:23-cv-5416-TWT, 2024 WL 3972984, at *4 (N.D. Ga. Aug. 28, 2024) (dismissing ECPA claim because defendant elected to install a pixel on its website and was intended recipient of the communications).

Plaintiff concedes that SPD was a party to the alleged intercepted communications. *See* Compl. ¶ 247 ("Defendants are a 'party to the communication'

with respect to customer/user communications.”). Courts routinely dismiss ECPA claims on this basis alone. *See, e.g.*, *Allen v. Novant Health, Inc.*, No. 1:22-cv-00697, 2023 WL 5486240, at *4 (M.D.N.C. Aug. 24, 2023) (dismissing ECPA claim because plaintiffs alleged that defendant “received the communication, sent to them directly and specifically by the plaintiffs, and that it was Facebook that intercepted the communication via the pixel”); *Kurowski v. Rush Sys. for Health*, 659 F.Supp.3d 931, 938 (N.D. Ill. 2023) (dismissing ECPA claim because defendant was a party to the alleged intercepted communications). For instances, in *B.K. v. Eisenhower Medical Center*, 721 F.Supp.3d 1056, 1061 (C.D. Cal. 2024), plaintiff alleged that defendant violated ECPA by installing a pixel on its website that allowed Facebook to intercept communications. The court held that because defendant “was the party that was meant to, and did, receive [p]laintiffs’ communications on the [w]ebsite, under the party exception, ‘any alleged interception of the communications is not actionable.’” *Id.* at 1065 (citing *Pena v. GameStop, Inc.*, 670 F.Supp.3d 1112, 1115-16 (S.D. Cal. 2023) (dismissing ECPA claim)).

Here, SPD purportedly installed the third-party tracking technologies on its Website. *See, e.g.*, Compl. ¶¶ 8, 15, 96, 266. This is tantamount to “consent” from SPD to the alleged interception and likewise grounds for dismissal of Plaintiff’s ECPA claim. For instance, in *Roe v. Amgen Inc.*, No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482, at *1 (C.D. Cal. June 5, 2024), plaintiffs alleged that they enrolled in an online support program for individuals treating certain medical

conditions. As part of the enrollment process, plaintiffs input information such as their dates of birth, zip codes, and diagnoses. *Id.* Plaintiffs alleged that defendant embedded tracking pixels on the website that sent this information to third parties in violation of ECPA. *Id.* The court dismissed the claim because "[p]laintiffs' allegations are self-defeating; their complaint is only susceptible to an inference that [d]efendant, as the creator and operator of its website, consented to the use of data collection tools it installed on its website." *Id.* at *6. Similarly, in *R.S. v. Prime Healthcare Services, Inc.*, No. 5:24-cv-00330-ODW, 2024 WL 3730609, at *1 (C.D. Cal. Aug. 7, 2024), plaintiff alleged that defendant, a healthcare company, utilized tracking pixels on its website to collect information regarding the medical conditions for which its visitors sought treatment, and subsequently disclosed that information to third parties for pecuniary gain. *Id.* The court held that defendant was exempt under ECPA, "as the party that 'installed tracking technologies on its Web Properties,' [defendant] necessarily consented to the use of those pixels and the 'interception' of the communications between [plaintiff] and [defendant]." *Id.* at *3 (dismissing ECPA claim); *see also Doe I v. Google LLC*, No. 23-cv-02431-VC, 2024 WL 3490744, at *5 (N.D. Cal. July 22, 2024) (same).

In sum, Plaintiff alleges that SPD intercepted communications intended for SPD with the Tracking Tools that SPD allegedly employed on the Website. This theory of liability is squarely foreclosed by the party consent exemption. *See* 18 U.S.C. § 2511(2)(d).

### 2. Plaintiff Fails To Plausibly Allege That The Crime-Tort Exception Applies.

Additionally, there is no basis here to apply ECPA's "crime-tort exception", which generally provides that a party to a communication can be liable if the interception is "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d); Compl. ¶ 246. For this exception to apply, a plaintiff must plausibly allege that the interception was undertaken for a criminal or tortious purpose, and that the alleged crime or tort was independent of the interception itself. *See Pena*, 670 F.Supp.3d at 1119–20 (dismissing ECPA claim because party exception applied and plaintiff did not allege that defendant intercepted the communications for a tortious purpose, and even if plaintiff had, plaintiff did not allege that the tortious conduct was separate from the wiretapping itself); *see also In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) (affirming dismissal of ECPA claim because defendants were parties to the communications and plaintiffs did not plead a tortious or criminal use of the communications separate from the interception).

Here, Plaintiff alleges in the alternative that SPD's conduct was done "for purposes of committing" three specific crimes or tortious acts: violation of Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d-6 ("HIPAA"), violation of CIPA, and common law invasion of privacy. *See* Compl. ¶ 256(a)–(c). While Plaintiff also makes a broad allegation that SPD's conduct was

done "for purposes of committing criminal and tortious acts in violation of the laws," *id.*, this Court must look to see what crimes or torts Plaintiff plausibly *pleaded* a violation of. *See generally B.K. v. Eisenhower Med. Ctr.*, No. 23-cv-02092-JGB, 2024 WL 2037404, at *3 (C.D. Cal. Apr. 11, 2024) ("[T]he focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious."; dismissing ECPA claim for failure to allege violation of HIPAA). Plaintiff's allegations are insufficient to invoke the crime-tort exception for several reasons.

***First***, Plaintiff cannot state a claim for a HIPAA violation against SPD as a matter of law. Only "covered entities" are subject to HIPAA, which SPD is undisputably not. *See* 45 C.F.R. § 160.102 (applicability of HIPAA); *see also* Compl. ¶ 148 ("Defendants, although not covered entities under HIPAA, engaged in actions that are in violation of HIPAA's rules and standards in place to protect individuals' PHI."). Nor can Plaintiff state a CIPA or common law invasion of privacy claim as a matter of law for the reasons set forth in more detail in Sections IV.B–.C, *infra*.

This court has declined to apply the crime-tort exception where the plaintiff does not plausibly allege that the defendant committed the identified crime or tort. Specifically, in *B.K. v. Eisenhower Medical Center*, plaintiffs asserted an ECPA claim against defendant for allegedly installing pixels on its website that collected and disclosed protected health information to third parties. 721 F.Supp.3d at 1061.

The court dismissed the claim because defendant was a party to the communications, and although plaintiffs alleged that defendant engaged in the interception for a "commercial advantage," such purpose did not constitute an independently illegal or actionable conduct such that the crime-tort exception applied. *Id.* at 1065. And although plaintiffs moved for reconsideration, arguing that the court failed to consider that "it is [d]efendant's violation of HIPAA, not its use of [p]laintiffs' health information for commercial advantage, that constitutes [d]efendant's criminal or tortious conduct," the motion was denied. *B.K. v. Eisenhower Medical Center*, 2024 WL 2037404, at *3. This was because, the court held, plaintiffs had not sufficiently pled an independent HIPAA violation and plaintiffs' HIPAA allegations were "far too vague." *Id.*

***Second***, even if Plaintiff could plausibly allege a HIPAA, CIPA, or invasion of privacy claim against SPD (she cannot), Plaintiff fails to allege a tortious or criminal act that was separate from the act of interception itself. In fact, Plaintiff admits that the alleged interception and wrongful disclosure of information to third parties occurred in a single action. *See, e.g.*, Compl. ¶ 193 ("Contemporaneously with the interception and transmission of Plaintiff's communications on https://www.clearblue.com/, Defendants also disclosed to Meta Plaintiff's personal identifiers, including but not limited to her IP address and Facebook ID."); *id.* ¶ 247 ("simultaneous, unknown duplication, forwarding and interception"); *id.* ¶ 271

("Defendants . . . automatically and simultaneously transmit highly sensitive personal communications to Facebook and/or Google for targeted advertising.").

This cannot satisfy the "separate and independent" requirement of the crime-tort exception. For example, in *Doe v. Kaiser Foundation Health Plan, Inc.*, No. 23-cv-02865-EMC, 2024 WL 1589982, at *2 (N.D. Cal. Apr. 11, 2024), plaintiffs alleged that defendants violated ECPA when they installed third-party tracking technologies on their website and mobile applications, which plaintiffs used to schedule appointments, check medical results, review medical histories, research doctors, and communicate with healthcare providers. Defendants moved to dismiss the claim because they were parties to the communications at issue and consented to the alleged interception. *Id.* at *8. Plaintiffs argued that the crime-tort exception should apply "because the communications were intercepted [] for the purpose of violating HIPAA." *Id.* at *10. The court disagreed, holding the "act of interception itself cannot be the crime or the tort." *Id.* (granting motion to dismiss); *see also Okash v. Essentia Health*, No. 23-482, 2024 WL 1285779, at *4 (D. Minn Mar. 26, 2024) (dismissing ECPA claim because defendant was a party to the communications and the crime-tort exception did not apply where "[plaintiff's] allegations that [defendant] violated HIPAA and privacy torts encompass only the simultaneous interception and disclosure of information to Meta"). *Id.*

***Third***, and as noted *supra*, allegedly acting for commercial gain is not a criminal or tortious purpose. *See, e.g.*, Compl. ¶¶ 18, 158 (alleging Defendants' use

of information "for marketing and revenue generation was in violation of HIPAA and an invasion of privacy"), 159 ("Defendants used the Tracking Tools on the Website for their own purposes of marketing and profits"), 241 (alleging Defendants' purpose to "increase their profit margin" and use information "for financial gain"), 249 (same). For example, in *Kaiser*, plaintiffs alleged that defendants used the information they collected via third-party tracking technologies to improve their marketing. 2024 WL 1589982, at *2 (N.D. Cal. Apr. 11, 2024). The court held that this was not a basis to apply the crime-tort exception because "[t]he collection of information itself was not for the purpose of committing a crime or tort (at least, as pled); rather, the apparent purpose was to use the information collected for market research and consumer analysis solely for the benefit of [defendants] in better reaching and serving [their] patients." *Id.* at *10 (dismissing ECPA claim); *see also In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 787 (N.D. Cal. 2022) ("Multiple courts in this district have found that the crime-tort exception to [ECPA] is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously."); *In re Google, Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (crime-tort exception does not apply where defendant's primary motivation is monetary).

Accordingly, the Court should dismiss Count I with prejudice because SPD is exempt from liability under ECPA as an intended recipient of the alleged intercepted communications and the crime-tort exception does not apply.

**B. Plaintiff's Claim For Violation Of The California Invasion Of Privacy Act Fails.**

Plaintiff also pleads no cognizable claim under CIPA. CIPA Section 631(a) contains four clauses, the first three of which prohibit three different forms of wiretapping and communication intercepting. *See* Cal. Penal Code § 631(a); *see also, e.g.*, *Martin v. Sephora USA, Inc.*, No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636, at *6 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023). Plaintiff alleges that SPD violated the fourth clause of CIPA by "aid[ing], employ[ing], agree[ing] with, and conspir[ing] with Facebook, Google and likely other third parties to track and intercept Plaintiff's and California Subclass Members' internet communications." Compl. ¶ 266; *see also id.* ¶ 152. Plaintiff's CIPA claim against SPD should be dismissed because it (1) was brought outside the statute of limitations and (2) fails to plausibly allege that SPD had knowledge of any violations of CIPA by a third party.

**1. The CIPA Claim Was Brought Outside the Statute of Limitations.**

"CIPA has a one-year statute of limitations." *Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891, 901 (N.D. Cal. 2023) (granting motion to dismiss CIPA claim against website operator on statute of limitations grounds); *see* Cal. Civ. Proc. Code § 340(a). Plaintiff alleges she visited the Website on September 29, 2022. *See* Compl. ¶ 189. Plaintiff filed the Complaint on August 1, 2024—over a year after the Website visit and thus facially outside the statute of limitations. *See Javier*, 649

F.Supp.3d at 895, 901 (calculating statute of limitations period from date of website visit). A court may dismiss a claim where the allegations show the claim was brought outside of the statute of limitations. *See, e.g.*, *id.*; *Lau v. Gen Digital Inc.*, No. 22-cv-08981-JST, 2023 WL 10553772, at *3 (N.D. Cal. Sept. 13, 2023) (dismissing CIPA claim as outside of statute of limitations where alleged violations occurred outside of statute of limitations and thus were "facially time-barred").

Plaintiff's Complaint, tacitly acknowledging Plaintiff's claim was brought over a year from the alleged violation, contains argument that the statute of limitations should be tolled for (1) SPD's alleged fraudulent concealment, also known as equitable estoppel, and (2) the delayed discovery doctrine. *See* Compl. ¶¶ 202–209. Neither provides a basis here to toll the statute of limitations.

A plaintiff alleging fraudulent concealment must plead "with particularity" "facts showing that [i] [defendant] affirmatively misled it, and [ii] that [plaintiff] had neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts." *Lau*, 2023 WL 10553772, at *3 (quoting *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 505 (9th Cir. 1988)). "The second element requires the plaintiff to allege (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Id.* (internal quotations omitted; quoting *Garcia v. Gen. Motors LLC*, No. 1:18-cv-01313-LJO-BAM, 2018 WL

6460196, at *6 (E.D. Cal. Dec. 10, 2018)). Further, fraudulent concealment requires conduct "above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Id.* (quoting *De Los Reyes v. Ruchman & Assocs., Inc.*, No. 14-cv-00534-WHO, 2014 WL 4354238, at *5 (N.D. Cal. Sept. 2, 2014)).

Plaintiff's allegations of fraudulent concealment are deficient for several reasons. ***First***, there are no allegations that SPD affirmatively misled Plaintiff as to the existence of any the Meta Pixel and/or Google Analytics on the Website. To the extent Plaintiff alleges that the Supplemental Health Privacy Policy is affirmatively misleading, *see* Compl. ¶¶ 33, 216, 257, any statement in the policy cannot be a basis to toll the statute of limitations because it was first made in March 2024 after expiration of the statute of limitations. *See* Brennan Decl. ¶¶ 6–7, 10–11. ***Second***, conclusory allegations that "Plaintiff was ignorant of the information essential to pursue their [sic] claims, without any fault or lack of diligence on her part," Compl. ¶ 205, are insufficient to plead with particularity. *See Lau*, 2023 WL 10553772, at *3 (near verbatim allegations insufficient). And ***third***, while the Complaint alleges when Plaintiff ***could have*** discovered the alleged conduct, Compl. ¶ 209, there are no allegations when and how Plaintiff ***did*** discover the alleged conduct. *See Lau*, 2023 WL 10553772, at *3 ("Plaintiffs also nowhere allege when the alleged fraud was discovered or how it was discovered"; dismissing CIPA claim as untimely).

Plaintiff thus cannot rely on the theory of fraudulent concealment to toll the statute of limitations.

Plaintiff fares no better under the delayed discovery doctrine. "To invoke the delayed discovery doctrine, a plaintiff must plead facts to show the '(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" *Javier*, 649 F.Supp.3d at 901 (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914 (Cal. 2005)). And the delayed discovery doctrine "only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Id.*

*Javier* is instructive. In *Javier*, plaintiff visited a website in January 2019 which allegedly used a third party's software to record his interactions with the website. 649 F.Supp.3d at 894–95. Plaintiff filed suit under CIPA and alleged that while he was aware the website operator received information in January 2019, he did not learn a third-party software provider recorded interactions until April 2020. *Id.* at 901. The Court held that plaintiff did not plausibly plead he would have been unable to discover the conduct with reasonable diligence, stating that plaintiff's awareness of the website's information collection thus meant he had "constructive notice of the Privacy Policy" which disclosed the possibility of using third parties to collect that information. *Id.* at 902. The Court emphasized that "[i]t is of no consequence, too, that [plaintiff] did not know that [the software provider] was the third party involved." *Id.*

Plaintiff's allegations are insufficient for the same reasons as those in *Javier*. Plaintiff alleges that she provided personally identifiable information to SPD. *See, e.g.*, Compl. ¶¶ 87, 154, 193. Plaintiff thus had constructive, if not actual, notice of the Website's Privacy Policy, which discloses the possibility that information "may be shared with partners" like Facebook or Google. *See* Privacy Policy at 4. That Plaintiff allegedly did not know the identity of the partners involved is "of no consequence." Moreover, Plaintiff alleged that after her visit to the Website, she saw ads for Clearblue products on Facebook. *See* Compl. ¶ 199. Plaintiff has failed to plausibly allege an inability to have made earlier discovery despite reasonable diligence. Plaintiff thus cannot rely on the delayed discovery doctrine to toll the statute of limitations.

Because Plaintiff's CIPA claim was brought outside the one-year statute of limitations, it should be dismissed with prejudice.

**2. Plaintiff Has Failed To Plead The Requisite Scienter For An Aiding and Abetting Claim.**

Clause four of CIPA § 631(a) prohibits "aid[ing], agree[ing] with, employ[ing], or conspir[ing] with any person or persons to unlawfully do, or permit, or cause to be done" a CIPA violation. Cal. Penal Code § 631(a). However, CIPA contains no statutory definition of these terms. Thus, courts interpreting CIPA turn to the common law definition of aiding and abetting, which requires that plaintiff show that defendant "(a) kn[ew] the other's conduct constitute[s] a breach of duty

and g[ave] substantial assistance or encouragement to the other to so act or (b) g[ave] substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-00102-DMS-KSC, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (quoting *Saunders v. Superior Court*, 33 Cal.Rptr.2d 438 (Cal. Ct. App. 1994)); *see also Rodriguez v. Ford Motor Co.*, 722 F.Supp.3d 1104, 1124 (S.D. Cal. 2024) (adopting common law definition).

Here, Plaintiff's CIPA claim must be dismissed because there are no allegations that SPD knew that the conduct of Facebook, Google, or any other third party constituted a breach of CIPA. The most that Plaintiff alleges is that SPD intentionally installed the Facebook Pixel, Google Analytics, and other "Tracking Tools," Compl. ¶ 268, and that SPD "knew or had reason to know" that those tools would direct information to Facebook, Google, and unnamed others, *id.* ¶ 255.

Other California federal courts addressing identical aiding-and-abetting CIPA claims have held such allegations to be insufficient. *See, e.g.*, *Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-00102-DMS-KSC, 2024 WL 3761293, at *3 (S.D. Cal. Aug. 5, 2024) (dismissing CIPA claim with prejudice; allegations that defendant installed third-party software on website insufficient to "show Defendant knew [third party's] conduct would breach some duty owed to Plaintiff or that [third party] intended to violate [CIPA]"); *Rodriguez*, 772 F.Supp.3d at 1124 (dismissing CIPA claim where no allegations that "Defendants knew [third party's] conduct constituted

a breach of some duty" nor that defendants had "knowledge of the unlawful purpose of the perpetrator"); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) (Garnett, J.) (dismissing CIPA claim; "[w]hile the Complaint alleges that Defendant paid [third party] to intercept messages, it does not allege facts demonstrating Defendant acted with the requisite knowledge or intent to aid and abet [third party's] purported CIPA violation.").

**C. Plaintiff's Invasion Of Privacy Claim Fails.**

To state a claim for intrusion upon seclusion, a plaintiff must allege that (1) defendant intentionally intruded into a place, conversation, or matter as to which plaintiff has a reasonable expectation of privacy, and (2) the intrusion was highly offensive to a reasonable person. *Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1072 (Cal. 2009). Plaintiff has failed to plausibly allege an "intrusion," let alone one that was "highly offensive," and thus her claim should be dismissed.

***First***, it is well established that a defendant cannot "intrude" into communications to which defendant was a party. For instance, in *Kurowski*, plaintiff alleged that defendant invaded her privacy by deploying third-party source code that caused personally identifiable patient data to be disclosed to third parties. The court dismissed the claim because "the allegedly intercepted communications were intended to reach [defendant]." 659 F.Supp.3d at 943. Likewise, in *Williams v. TMC Health*, No. 23-cv-00434-TUC-SHR, 2024 WL 4364150, at *7 (D. Ariz. Sept. 30, 2024), plaintiffs alleged that defendant intruded upon their private communications

by embedding tracking technologies on its website which disclosed those communications to third parties. The court held that plaintiffs failed to state a claim for intrusion upon seclusion because "the only *intrusion* is perpetrated by the technology companies, *not* [d]efendant." *Id.* at *8 (emphasis in original); *see also Allen v. Novant Health*, No. 1:22-CV-697, 2023 WL 5486240, at *2 (M.D.N.C. Aug. 24, 2023) (dismissing intrusion upon seclusion claim "[b]ecause the plaintiffs acknowledge in the complaint that they voluntarily provided their information directly to [defendant]"); *Steinberg v. CVS Caremark Corp., et al.*, 899 F.Supp.2d 331, 342-43 (E.D. Pa. 2012) (voluntary disclosure of information to defendant precluded intrusion upon seclusion claim based on defendant selling the information to third parties). This principle is applicable here. Plaintiff alleges that she intended for SPD to receive her communications. *See, e.g.*, Compl. ¶ 89 ("Plaintiff and Class Members . . . [did not] intend for anyone other than Defendants to be a party to their communications (many of them highly sensitive and confidential) with Defendants."), ¶ 194 (alleging Plaintiff expected here communications to be "solely between herself and Defendants"), ¶ 278. Thus, there can be no "intrusion" by SPD.

***Second***, even if SPD committed an intrusion (it did not), Plaintiff fails to plausibly allege this was "highly offensive." California "set a high bar for an invasion of privacy claim." *See Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1025 (N.D. Cal. 2012) (dismissing invasion of privacy claim because the alleged disclosure to third parties of plaintiffs' LinkedIn ID and the URL of the LinkedIn

profile page that the user viewed was not highly offensive). And, indeed, even disclosure of highly personal information, such as social security numbers, is not "highly offensive." *See also Ruiz v. Gap, Inc.*, 540 F.Supp.2d 1121, 1127–28 (N.D. Cal. 2008), *aff'd*, 380 F.App'x. 689 (9th Cir. 2020) (disclosure to social security numbers of job applicants did not constitute an egregious breach of privacy). Nor is the disclosure of geolocation data or online browsing histories. *See In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1063 (N.D. Cal. 2012) (disclosure of unique device identifier number, personal data, and geolocation information did not constitute an egregious breach of privacy); *see In re Google, Inc. Priv. Pol'y*, 58 F.Supp.3d at 988 (Google's collection and disclosure of users' browsing histories was not highly offensive).

Plaintiff's Complaint is similar to that of the plaintiff in *Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1090 (N.D. Cal. 2022). In *Hammerling*, plaintiff asserted an invasion of privacy claim against defendant for its unauthorized collection of data as to the frequency and duration that smartphone owners used third-party applications. Plaintiff alleged that from the data defendant "can learn details of a user's sleep schedule, menstrual cycle, or exercise routine based on when and how often they interact with an alarm clock app, fertility tracker, or fitness app." *Id.* at 1078. The court held that this information was not "highly offensive" because "without more, it is not plausible that [defendant] can deduce a user's menstrual cycle just from knowing how long the user uses a fertility tracker app." *Id.* at 1091.

Similarly, here, a third party cannot reliably infer the condition of Plaintiff based on her purchase of a SPD product without more information (*e.g.,* the product was purchased for herself; the product was purchased with the intent to treat a particular medical condition).

Indeed, another court has recognized that an invasion of privacy plaintiff must plead more than the mere disclosure of health-related products viewed online. In *R.C. v. Walgreen Co.*, No. 5:23-cv-01933-JGB-SP, 2024 WL 2263395, at *8 (C.D. Cal. May 9, 2024), the court denied a motion to dismiss an invasion of privacy claim because plaintiffs "allege more than merely viewing generic medical content on a publicly facing website; they allege that they purchased specific products ***to treat specific health conditions***." (emphasis added). To be sure, the operative complaint alleged that "Plaintiff R.C. specifically sought to purchase Monistat in order to treat a vaginal yeast infection and placed Monistat in her virtual shopping car on the Website." First Amended Complaint, *R.C. v. Walgreen* (Oct. 27, 2023), ECF No. 19, ¶ 185. Plaintiff, in contrast, does not allege that she purchased an SPD product for herself to treat a medical condition. *See* Compl. ¶¶ 187–201 ("Plaintiff's Experience"). There is no "highly offensive" personal information to be gleaned from Plaintiffs' browsing history on the Website.

In sum, Plaintiff's Complaint falls short of plausibly alleging a highly offensive intrusion necessary to state a claim for invasion of privacy as a matter of law. Thus, the Court should dismiss Count III.

### D. Plaintiff's Unjust Enrichment Claim Fails.

Plaintiff cannot assert a claim for unjust enrichment against SPD because it is not an independent cause of action under California law. *See, e.g.*, *City of Oakland v. The Oakland Raiders*, 299 Cal.Rptr.3d 463, 477 (Cal. Ct. App. 2022) ("There is no cause of action in California labeled 'unjust enrichment'"); *Sepanossian v. National Ready Mix Company, Inc.*, 315 Cal.Rptr.3d 373, 385 (Cal. Ct. App. 2023) (same). Courts regularly dismiss unjust enrichment claims asserted under California law on this basis alone. *See, e.g.*, *Low v. LinkedIn*, 900 F.Supp.2d at 1031 (dismissing unjust enrichment claim because "this claim is not recognized in California as a matter of law"); *Robinson v. HSBC Bank USA*, 732 F.Supp.2d 976, 987 (N.D. Cal. 2010) (dismissing unjust enrichment claim because it is not a stand-alone cause of action under California law).

Alternatively, California courts may view an unjust enrichment claim as a quasi-contract claim seeking restitution. *See Hill v. Roll Int'l Corp.*, 128 Cal.Rptr.3d 109 (Cal. Ct. App. 2011) ("Unjust enrichment is not a cause of action, just a restitution claim."). In order for such a claim to survive a motion to dismiss, however, a plaintiff must plausibly allege that he or she lacks an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *see also In re Apple Processor Litig.*, No. 18-cv-00147-EJD, 2022 WL 2064975, at *11-12 (N.D. Cal. June 8, 2022) ("Plaintiffs asserting equitable claims in federal court must abide by 'traditional principles governing equitable remedies in federal courts,'

including the requirement that they first establish a lack of adequate remedy at law before securing equitable relief."). Here, Plaintiff has failed to do so. She merely asserts that SPD "should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds [SPD] received as a result of its conduct alleged herein." Compl. ¶ 292.

Accordingly, the Court should dismiss Count IV.

## V. CONCLUSION

For the foregoing reasons, Defendant SPD Swiss Precision Diagnostics GmbH respectfully requests that the Court dismiss the entirety of the Complaint with prejudice.

Dated: December 23, 2024

**SQUIRE PATTON BOGGS (US) LLP**
By: */s/ Kristin L. Bryan*
Kristin L. Bryan

*Attorney for Defendant SPD Swiss Precision Diagnostics GmbH*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant SPD Swiss Precision Diagnostics GmbH, certifies that this brief contains 6,857 words, which complies with the word limit of L.R. 11-6.1.

December 23, 2024

/s/ *Yamili Gonzalez*
Yamili Gonzalez

**ATTESTATION STATEMENT**

I, Yamili Gonzalez, am the ECF User whose identification and password are being used to file this stipulation. Pursuant to Local Rule 5-4.3.4(a)(2)(i), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

/s/ *Yamili Gonzalez*

Yamili Gonzalez