Matthew J. Langley (SBN 342286)
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
t: (708) 529-5418
matt@almeidalawgroup.com

*Attorney for Plaintiff & the Proposed Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROZ SAEDI, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>SPD SWISS PRECISION DIAGNOSTICS GMBH d/b/a CLEARBLUE,<br><br>Defendant. | Case No. 2:24-cv-6525-WLH<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS**<br>Date: February 28, 2025<br>Time: 1:30 p.m.<br>Courtroom: 9B<br>Judge: Hon. Wesley L. Hsu<br><br>Complaint Filed: August 1, 2024 |

# TABLE OF CONTENTS

INTRODUCTION …………………………………………….…………….. 1

FACTUAL BACKGROUND ……………………………………….…..…….3

LEGAL STANDARD ……………………………………………….…………. 4

ARGUMENT ……………………………………………………….……... 5

  A. Plaintiff has Plausibly Pled Invasion of Privacy by Showing
     a Reasonable Privacy Interest and a Highly Offensive Intrusion …..……... 5

  B. Plaintiff's CIPA Claims Are Well Pled …….………...…………………….. 8

    1. Plaintiff's CIPA claims are tolled under both the delayed
       discovery rule and the fraudulent concealment doctrine ………..………. 8

    2. Plaintiff has properly alleged scienter ………………………………… 11

  C. Plaintiff's ECPA Claim is Sufficiently Pled Because it Meets
     the Crime-Tort Exception ……………….……..………………………….. 12

    1. SPD's criminal and tortious purpose ………..…………………….. 13

    2. SPD's criminal and tortious purpose was independent
       from interception …………………………………….…………... 14

    3. SPD's financial motive ........................................................... 17

  D. Plaintiff's Unjust Enrichment Claim is Sound ….…………………….... 17

CONCLUSION ………………….…..………………………...…… 19

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

# TABLE OF AUTHORITIES

**Cases**                                                                                **Page(s)**

*A.D. v. Aspen Dental Mgmt., Inc.*,
  2024 WL 4119153 (N.D. Ill. Sept. 9, 2024)................................................15

*A.J. v. LMND Med. Grp., Inc.*,
  2024 WL 4579143 (N.D. Cal. Oct. 25, 2024)..........................................9, 10

*Allen v. Novant Health*,
  2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) .............................................6

*Am. Acad. of Pediatrics v. Lungren*,
  16 Cal.4th 307 (1997)...................................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .....................................................................................4

*B.K. v. Desert Care Network*,
  2024 WL 1343305 (C.D. Cal. 2024) ........................................... *passim*

*Brown v. Google LLC*,
  525 F. Supp. 3d 1049 (N.D. Cal. 2021).......................................... 11, 13

*C.M. v. MarinHealth Med. Grp., Inc.*,
  2024 WL 217841 (N.D. Cal. Jan. 19, 2024) ......................................17

*Cahill v. Liberty Mut. Ins. Co.*,
  80 F.3d 336 (9th Cir. 1996)..........................................................................4

*Cousin v. Sharp Healthcare*,
  702 F. Supp. 3d 967 (S.D. Cal. 2023) .........................................................6

*Doe v. Fullstory, Inc.*,
  712 F.Supp.3d 1244 (N.D. Cal. 2024)....................................................9, 10

*Doe v. Kaiser Foundation Health Plan, Inc.*,
  2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)............................................16

*Doe v. Meta Platforms, Inc.*,
  690 F.Supp.3d 1064 (N.D. Cal. Sept. 7, 2023) .............................. 14, 16

*Doe v. Regents of University of California*,
  672 F.Supp.3d 813 (N.D. Cal. 2023)...................................................6, 18

*ESG Capital Partners, Ltd. P'ship v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016) ...................................................................18

*Fox v. Ethicon Endo-Surgery, Inc.*,
    35 Cal. 4th 797 (2005) ...............................................................................8

*Fraley v. Facebook, Inc.*,
    830 F. Supp. 2d 785 (N.D. Cal. 2011) .......................................................18

*Grafilo v. Wolfsohn*,
    33 Cal. App. 5th 1024 (2019) .....................................................................7

*Hammerling v. Google LLC*,
    615 F.Supp.3d 1069 (N.D. Cal. 2022) ........................................................6

*Hartley v. Univ. of Chicago Med. Ctr.*,
    2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) ...............................................2

*Hexcel Corp. v. Ineos Polymers, Inc.*,
    681 F.3d 1055 (9th Cir. 2012) ...................................................................11

*In re Anthem Inc. Data Breach Litig.*,
    2016 WL 3029783 (N.D. Cal. May 27, 2016) ............................................18

*In re Facebook Privacy Litigation*,
    572 F. App'x 494 (9th Cir. 2014) ..............................................................18

*In re Facebook, Inc. Consumer Priv. Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ........................................................5

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589, 600 (9th Cir. 2020) .............................................................18

*In re Grp. Health Plan Litig.*,
    709 F. Supp. 3d 719 (D. Minn. 2023) .......................................................16

*In re Meta Pixel Healthcare Litig.*,
    647 F. Supp. 3d 778 (N.D. Cal. 2022) .....................................................5, 7

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ...........................................18

*Javier v. Assurance IQ, LLC*,
    649 F.Supp.3d 891 (N.D. Cal. 2023) ..........................................................9

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

*Kane v. Univ. of Rochester*,
   2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ......................................................2

*Katz-Lacabe v. Oracle Am., Inc.*,
   2023 WL 6466195 (N.D. Cal. Oct. 3, 2023) ......................................................17

*Knappenberger v. City of Phoenix*,
   566 F.3d 936 (9th Cir. 2009) ......................................................5

*Mata v. Zillow Grp., Inc.*,
   2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) ......................................................12

*Mekhail v. N. Mem'l Health Care*,
   726 F. Supp. 3d 916 (D. Minn. 2024) ......................................................17

*Okash v. Essentia Health*,
   2024 WL 1285779 (D. Minn. Mar. 26, 2024) ......................................................16

*Ovando v. Cnty. of Los Angeles*,
   159 Cal. App. 4th 42 (2008) ......................................................8

*R.C. v. Walgreen Co.*,
   733 F. Supp. 3d 876 (C.D. Cal. 2024) ...................................... *passim*

*R.S. v. Prime Healthcare Servs., Inc.*,
   2025 WL 103488 (C.D. Cal. Jan. 13, 2025) ...................................... 2, 14, 15, 17

*Rodriguez v. Google LLC*,
   2021 WL 2026726 (N.D. Cal. 2021) ......................................................7

*St. Aubin v. Carbon Health Techs., Inc.*,
   2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ......................................................7

*Steinberg v. CVS Caremark Corp.*,
   899 F.Supp.2d 331 (E.D. Pa. 2012) ......................................................6

*Toy v. Life Line Screening of Am. Ltd.*,
   2024 WL 1701263 (N.D. Cal. 2024) ......................................................2, 12

*U.S. ex rel. Lee v. SmithKline Beecham, Inc.*,
   245 F.3d 1048 (9th Cir. 2001) ......................................................19

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
   592 F.3d 954 (9th Cir. 2010) ......................................................8

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

*Ward v. Westinghouse Can.*,
    32 F.3d 1405 (9th Cir. 1994) ..................................................................10

*Williams v. TMC Health*,
    2024 WL 4364150 (D. Ariz. Sept. 30, 2024) ........................................6

**Statutes**

18 U.S.C. § 2511 ............................................................................. 12, 13

42 U.S.C. § 1320d-6 ...........................................................................13

Cal. Penal Code § 630 ........................................................................13

## INTRODUCTION

Reproductive health, including issues surrounding pregnancy and infertility, are among the most sensitive and protected health information a person possesses. Fertility, pregnancy, menstruation, and sexual health are deeply private and often tied to societal pressures, personal identity, and cultural expectations. Furthermore, women may face stigma or discrimination based on their reproductive choices or health conditions, making the protection and confidentiality of such information crucial.

Defendant SPD Swiss Precision Diagnostics GmbH ("SPD") is in the business of reproductive health, owning and controlling its website https://www.clearblue.com/ (the "Website" or "Defendant's Website") through which it encourages users to use, to review, and to purchase pregnancy, fertility and ovulation test kits. ¶ 7. Unbeknownst to its users, however, SPD installed third-party tracking technologies such as the Meta Pixel ("Facebook Pixel" or "Pixel"), as well as Google Analytics and Google Tag Manager (collectively, "Tracking Tools"), on its Website to surreptitiously collect its users' personally identifiable information ("PII"), protected health information ("PHI," and with PII, "Private Information") and individually identifiable health information ("IIHI"). ¶ 8. Specifically, these Tracking Tools, which include pixels, web beacons, tags, and cookies, track and collect user communications with Defendant via its Website and surreptitiously force the user's web browser to send those communications to undisclosed third parties, such as Facebook and Google. *Id*.

Rather than respect the privacy of those who chose to use its Website to research and purchase reproductive health products such as pregnancy tests, ovulation tests, fertility monitors, menopause indicators, and birth control kits, SPD surreptitiously shares such information, along with information that identifies those

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

users personally, and it does so in order to advance its own corporate self-interests. *See* ¶ 7.[1]

Now, SPD attempts to avoid judicial scrutiny by claiming Plaintiff's Electronic Communication Privacy Act ("ECPA") claim should be dismissed because the one-party exemption forecloses liability and the crime-tort exception does not apply. ECF No. 44 ("MTD") at 8-12. But courts in this District and throughout the country have found that the crime-tort exception applies where a defendant discloses IIHI (a) almost identical to the information Plaintiff alleges was disclosed here, and (b) through the very Tracking Tools SPD employed.[2]

SPD's arguments as to Plaintiff's CIPA claim are also unavailing. Indeed, SPD's claim that it acted with the requisite knowledge or intent to aid and abet the third parties to which it disclosed Plaintiff's Private Information are contradicted by Plaintiff's allegations that it installed and configured Tracking Tools in order to received compensation for its disclosing of that information. *See* ¶¶ 8, 78, 96, 160 &

---

[1] All paragraph citations are to Plaintiff's Complaint. *See* ECF No. 1.

[2] *See, e.g.*, *B.K. v. Desert Care Network*, 2024 WL 1343305, at *6, 9 (C.D. Cal. 2024) ("*Desert Care*") (denying motion to dismiss ECPA and common law invasion of privacy claims); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 890 (C.D. Cal. 2024) ("*Walgreens*") (denying motion to dismiss ECPA, CIPA, and invasion of privacy claims); *Gaige v. Exer Holding Co., LLC*, 24-cv-06099-AH, ECF No. 43 (C.D. Cal. Jan. 30, 2025) ("*Exer*") (Order attached hereto as Exhibit A) (denying motion to dismiss ECPA, CIPA, and invasion of privacy claims; *R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *4-7 (C.D. Cal. Jan. 13, 2025) ("*Prime Healthcare*") (granting motion to reconsider & denying motion to dismiss ECPA claim); *Toy v. Life Line Screening of America Ltd.*, 2024 WL 1701263, at * 1 (N.D. Cal. 2024) (similar); *Hartley v. Univ. of Chicago Med. Ctr.*, 2024 WL 1886909, at *2 (N.D. Ill. Apr. 30, 2024) (denying motion to dismiss ECPA claim); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *6-10 (W.D.N.Y. Mar. 19, 2024) (same). These courts recognized that defendants may not evade liability for secretly collecting and monetizing plaintiffs' and class members' PHI simply because they are a party to the communication involving such information.

---

2

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

266-67. SPD also points to its privacy policies in arguing that Plaintiff's CIPA claims should not be tolled because the policy provided constructive notice. *See* MTD at 21.[3] But the MTD allegations and the privacy policies to which SPD points demonstrate that SPD did not inform Plaintiff that her PHI would be disclosed to third parties nor that her PHI would be personally identifiable. *See, e.g.*, MTD at 20-21. Nor is this type of fact intensive inquiry appropriate at the pleading stage.

Finally, Plaintiff's invasion of privacy claim is sufficiently established by allegations that she had a reasonable expectation of privacy and the disclosure of her PHI was a highly offensive intrusion. ¶¶ 277-85. Courts in this District have found allegations like Plaintiff's to be sufficient to sustain a claim for California common law invasion of privacy. *See, e.g.*, *Desert Care*, 2024 WL 1343305, at *9 (denying motion to dismiss common law invasion of privacy claim); *Walgreens*, 733 F. Supp. 3d at 890 (same).

The Complaint plausibly alleges that SPD violated federal and state wiretap laws, invaded its users' privacy, and breached its own promises by disclosing sensitive medical information to third parties without authorization. At this early stage, where all reasonable inferences must be drawn in Plaintiff's favor, the Court should reject SPD's attempt to sidestep its unlawful conduct and deny the motion to dismiss in its entirety.

## FACTUAL BACKGROUND

Plaintiff and Class Members used SPD's Website to submit information related to their past, present, or future health conditions, including reviewing and purchasing pregnancy, fertility and ovulation test kits. ¶ 9. Such Private Information allows the third party (e.g., Facebook or Google) to know that a specific customer had a specific type of medical condition such as, for example, that they are pregnant or are trying to conceive. *Id.*

---

[3] SPD's statute of limitations argument as well as its claims regarding its privacy policies are relevant only to Plaintiff's CIPA claims.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

Specifically, Plaintiff Roz Saedi utilized Defendant's Website on several occasions, including as recently as September 2022, to research and attempt to purchase Clearblue products related to her reproductive health and conditions. ¶¶ 187-89. In doing so, she clicked the "buy now" link to purchase a reproductive test kit. ¶¶ 188-89. Unbeknownst to her, however, this information, along with Plaintiff Saedi's Facebook ID, computer IP address, and other personal identifiers, were transmitted by SPD through the use of its Tracking Tools to Facebook, alongside her PHI. ¶¶ 189-93.

SPD assures Website visitors, including Plaintiff, in its "Consumer Health Data Privacy Policy" that "[w]e do not sell your Consumer Health Data. We also do not share your Consumer Health Data with any Third Parties or Affiliates." ¶¶ 33-34. However, nothing in any of the Website's privacy policies revealed that SPD would disclose Plaintiff's substantive health information as well as her PII (including her Facebook ID and IP Address) that Meta and Google could use to personally identify her and send her targeted advertisements related to her health information. *Compare* MTD at 4-5, *with* ¶¶ 33-34.

Finally, Plaintiff never consented to SPD disclosing her Private Information to third-party companies. ¶¶ 89 & 197. Following her use of the Website, she received targeted advertisements related to her specific medical conditions and the products she researched and attempted to purchase on her Facebook account. ¶ 181.

## LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the burden of proof is on the movant, and the court draws all reasonable inferences in plaintiff's favor, assuming all well-pleaded factual allegations to be true and determining whether they plausibly give rise to an entitlement to relief. *See, e.g., Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337– 38 (9th Cir. 1996). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (stating that the plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement") (internal quotation marks omitted). Courts are instructed to freely grant leave to amend unless the defects identified could not possibly be cured. *See, e.g., Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## ARGUMENT

### A. Plaintiff has Plausibly Pled Invasion of Privacy by Showing a Reasonable Privacy Interest and a Highly Offensive Intrusion.

Plaintiff adequately alleges that Defendant's interception of her personal medical data through its use of Tracking Tools was an invasion of her privacy under common law. To assert a claim for invasion of privacy, a plaintiff must allege that "(i) there exists a reasonable expectation of privacy and (ii) the intrusion was highly offensive." *In re Facebook, Inc. Consumer Priv. Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019). Here, Plaintiff had a reasonable expectation that her IIHI, including information regarding her reproductive health and the products she researched and attempted to purchase to treat and/or diagnose her reproductive conditions, would not be shared with third parties including in a way that could personally identify her. *See, e.g.*, ¶¶ 153-57 & 277-85.

Courts in this District have consistently held that plaintiffs have a protected privacy interest in personal medical information. *See Desert Care*, 2024 WL 1343305, at *9 ("Plaintiffs have adequately alleged the disclosure of certain personal medical information to Meta. Patients' right to privacy in their medical records "is well-settled.") (internal citation omitted). Defendant, without Plaintiff's consent, disclosed her PHI to third-party digital advertising companies, such as Facebook. ¶ 9. As a result, Plaintiff was targeted with advertising about her sensitive PHI and IIHI. ¶¶ 82-84 & 186; s*ee also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 794 (N.D. Cal. 2022) ("[T]he collection of protected health information from a medical provider is a different matter entirely" than collecting general browsing

data); *Doe v. Regents of University of California*, 672 F.Supp.3d 813, 820 (N.D. Cal. 2023) ("Personal medical information is understood to be among the most sensitive information that could be collected about a person").

Defendant's attempt to distinguish its invasion of Plaintiff's privacy by claiming it was not an "intrusion" and citing cases that fail to apply California common law to support its assertion is unavailing. MTD at 23-24.[4] District courts in this circuit have held that alleging the use of Tracking Tools identical to those used by SPD to disclose IIHI almost indistinguishable from that disclosed here is sufficient to state a claim for common law invasion of privacy. *See, e.g.*, *Exer*, Ex. A at 12-13 (denying motion to dismiss invasion of privacy claim where "Plaintiff alleges that Defendant, without Plaintiff's consent, disclosed his PHI, along with his Facebook ID and IP address, to third-party digital advertising companies, such as Meta."); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973 (S.D. Cal. 2023) ("*Cousin II*") ("[T]he Court finds that their interactions on Defendant's website, while 'unauthenticated' or publicly facing, plausibly involve PHI," sufficient to plead invasion of privacy claims).

SPD's attempt to distinguish Judge Bernal's decision denying a motion to dismiss plaintiffs' invasion of privacy claim in *Walgreens* is likewise unavailing and, in fact, supports Plaintiff's claim here. *See* MTD at 26. The Court in *Walgreens* found that the sensitive health products defendant disclosed related to plaintiffs' specific health conditions. *See* 733 F.Supp.3d at 893.[5] Here, Plaintiff alleges that

---

[4] *See Williams v. TMC Health*, 2024 WL 4364150, at *7 (D. Ariz. Sept. 30, 2024) (applying Arizona common law); *Allen v. Novant Health*, 2023 WL 5486240, at *2 (M.D.N.C. Aug. 24, 2023) (applying North Carolina common law); *Steinberg v. CVS Caremark Corp.*, 899 F.Supp.2d 331, 342-43 (E.D. Pa. 2012) (applying Pennsylvania common law).

[5] SPD's application of *Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1090 (N.D. Cal. 2022) is likewise inapposite. In *Hammerling* plaintiff did not allege that the information collected by Google was non-aggregate or de-anonymized, specific to

Defendant tracked and disclosed Plaintiff's actions in researching and clicking the "buy now" link to purchase reproductive health test kits directly related to her specific reproductive health conditions. *See, e.g.*, ¶¶ 187-92. Plaintiff's allegation that Defendant used her PHI for targeted advertising emphasizes the egregious nature of this intrusion. *See* ¶¶ 198-99; *see also St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *2 (N.D. Cal. Oct. 1, 2024) (finding interceptions of private healthcare information for marketing purposes to be an egregious invasion of privacy); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *8 (N.D. Cal. 2021) (finding of a highly offensive invasion of privacy where defendant represented that medical data would not be disclosed).

In addition, Plaintiff's allegations involve distinct, personally identifiable medical information—PHI and IIHI—that are not available to the public, namely information about her reproductive health conditions and her attempt to purchase products to treat and/or diagnose those conditions. ¶ 178. Defendant's conduct thus supports Plaintiff's argument that Defendant's invasion of Plaintiff's privacy is highly offensive. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795 (finding interception of patient-specific health data is highly offensive); *Grafilo v. Wolfsohn*, 33 Cal. App. 5th 1024, 1034 (2019) (holding right to privacy in medical information is "well-settled" under California law); *Am. Acad. of Pediatrics v. Lungren*, 16 Cal.4th 307, 340 (1997) (explaining medical information among the most private and protected categories of data).

Accordingly, Plaintiff's allegations are sufficient to plead a highly offensive

---

the information inputted into the fertility tracker app by plaintiff or even the specific app from which Google collected the information at issue. Here, Plaintiff alleges that the information disclosed by SPD is personally identifiable, specific to the reproductive health information communicated by Plaintiff, and identifies the Website from which the information was disclosed. *See* ¶¶ 187-92.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

1  invasion of privacy.[6]

2  **B.  Plaintiff's CIPA Claims Are Well Pled**

3  **1.  Plaintiff's CIPA claims are tolled under both the delayed**
4  **discovery rule and the fraudulent concealment doctrine.**

5  The statute of limitations is an affirmative defense pursuant to which a claim
6  may be dismissed as time-barred only if "it appears beyond doubt that the plaintiff
7  can prove no set of facts that would establish the timeliness of the claim." *Von Saher*
8  *v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).
9  Whether the discovery rule applies is generally a "question of fact unless the
10  evidence can support only one reasonable conclusion." *Ovando v. Cnty. of Los*
11  *Angeles*, 159 Cal. App. 4th 42, 61 (2008). In the present matter, Plaintiff's claims
12  are tolled under both the delayed discovery rule and the fraudulent concealment
13  doctrine.

14  First, Plaintiff's claims were tolled due to the delayed discovery rule. To
15  trigger the discovery rule, a plaintiff need only plead "(1) the time and manner of
16  discovery and (2) the inability to have made earlier discovery despite reasonable
17  diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005). Here,
18  Plaintiff alleges that the Tracking Tools were "invisible to Plaintiff and Class
19  Members while using that Website" and "seamlessly integrated into the Website
20  such that there was no reason for Plaintiff or any Class Member to be aware of or to
21  discover their presence." ¶ 182. Additionally, Plaintiff alleges that "Plaintiff and
22  Class Members were shown no disclaimer or warning that their Private Information
23  would be disclosed to any unauthorized third party without their express
24  consent…[and] had no idea that their Private Information was being collected and
25  transmitted to an unauthorized third party." ¶¶ 183-84. Courts have found such

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
[6] Where plaintiffs plead sufficient facts, an inquiry into whether information is
28  "highly offensive" is "not suitable for resolution at the pleading stage." *Desert Care*, 2024 WL 1343305, at *9.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

1   allegations sufficient to establish tolling under similar circumstances. *See, e.g.*,
2   *Desert Care*, 2024 WL 1343305, at *5 (allegations that a defendant has secretly
3   stored pixels on a webpage and prevented discovery of the pixel are sufficient to toll
4   the statute of limitations at the pleading stage); *A.J. v. LMND Med. Grp., Inc.*, 2024
5   WL 4579143, at *1 (N.D. Cal. Oct. 25, 2024) (holding that delayed discovery rule
6   tolled statute of limitations where defendant installed identical tracking
7   technologies); *Doe v. Fullstory, Inc.*, 712 F.Supp.3d 1244, 1255-56 (N.D. Cal. 2024)
8   (statute of limitations tolled where defendant used embedded pixels to track
9   plaintiff's browsing).

10          Defendant cites *Javier v. Assurance IQ, LLC* for the proposition that plaintiff
11  had constructive notice of the Website's Privacy Policy, but *Javier* is inapposite to
12  the facts of this case. *See* MTD at 20-21 (discussing 649 F.Supp.3d 891 (N.D. Cal.
13  2023)). In *Javier*, the plaintiff brought CIPA claims against two defendants:
14  Assurance, an online platform through which users can obtain life insurance quotes,
15  and ActiveProspect, a software vendor contracted by Assurance to provide the
16  electronic forms on its website. *Id.* at 895. In his complaint, plaintiff alleged that
17  while he had "'assumed' that Assurance was collecting his information" through
18  spyware installed on its website over a year before filing his action, he "was not
19  aware of ActiveProspect's involvement" until a later date within the CIPA's statute
20  of limitation. *Id.* at 901. In evaluating the plaintiff's tolling argument, the court noted
21  that "under the delayed discovery doctrine, knowledge of injury, not knowledge of
22  a particular defendant's role in the injury, triggers inquiry notice." *Id.* Accordingly,
23  the court concluded that as the plaintiff, "by his own admission, was aware
24  Assurance's collection of his information [prior to the expiry of the statute of
25  limitations], he also had constructive notice of the Privacy Policy" which discussed
26  Assurance's use of third-party vendors. *Id.* at 902.

27          Here, Plaintiff does not allege any knowledge of SPD's use of Tracking Tools
28  prior to June of 2024. ¶ 209. On the contrary, Plaintiff alleges that she had "no idea

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

that her Private Information was being collected and transmitted to an unauthorized third party." ¶ 184. Accordingly, *Javier* has no relevance to this case, and Defendant's argument must fail.

Moreover, even if Plaintiff did have constructive notice of Defendant's Privacy Policy, Defendant's argument would still be unconvincing, as the Privacy Policy does not inform Website users of Defendant's disclosure of their IIHI to third parties nor does it disclose that the information it does share is personally identifiable. *See* ECF No. 44-2, Clearblue Privacy Policy ("The information collected using these pixel tags is not personally identifiable"). In its Motion to Dismiss, Defendant argues that the Privacy Policy "discloses the possibility that information 'may be shared with partners' like Facebook or Google." MTD at 21.

But Defendant ignores the contrary statements in the version of its Privacy Policy that was in effect when Plaintiff visited the Website, wherein Defendant ensured website visitors that the "information collected using[ ]pixel tags is not personally identifiable[,]" and further represented that it only processes "special categories of Personal Information" such as "health information related to product usage" for the sole purpose of "ensur[ing] high standards of quality and safety of [its] products." ECF No. 44-2. As such, the relevant disclosures were insufficient to put Plaintiff on notice of Defendant's use of the Tracking Tools to disclose her IIHI to third parties such as Facebook and Google. *See Fullstory*, 712 F. Supp. 3d at 1255 ("based on based on defendants' use of highly technical proprietary software… plaintiff's clear statement that 'the earliest' plaintiff could have known of her injury was shortly before filing" was sufficient to support tolling argument, privacy policy representations notwithstanding).

Even if Defendant's argument had any merit, it would still necessarily fail because determination of whether Plaintiff "was on inquiry notice of potential wrongdoing is a factual question" that is not properly decided on a motion to dismiss. *Ward v. Westinghouse Can.*, 32 F.3d 1405, 1408 (9th Cir. 1994); *see also LMND*

*Med. Grp., Inc.*, 2024 WL 4579143, at *3 (finding the same with regards to website tracking software).

Second, Plaintiff's claims are also tolled by the doctrine of fraudulent concealment because (i) Defendant took affirmative steps to mislead Plaintiff, (ii) Plaintiff lacked actual or constructive knowledge of her claim, and (iii) Plaintiff acted diligently in uncovering the basis of her claim. *See Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) (defining standard). Defendant took affirmative steps to hide the Tracking Tools from users of its Website, including Plaintiff, by "seamlessly integrat[ing the tracking tools] into the Website such that there was no reason for Plaintiff or any Class Member to be aware of or to discover their presence." ¶ 182. As a result, Plaintiff could not have discovered Defendant's violations of the law earlier because its Tracking Tools were deliberately hidden from view and were beyond the capacity of the average consumer to investigate or discover. *See* ¶¶ 202-209. Further, despite Defendant's representations to the contrary, Plaintiff alleges that she discovered her claim in June of 2024 when she spoke with counsel about Defendant's violations of law. ¶ 209. Courts have recognized that similar technical deception prevents users from acquiring notice of privacy violations. *See, e.g.*, *Exer*, Ex. A at 6 (holding that defendant's embedding invisible Tracking Tools that were deliberately designed to operate without users' knowledge or consent, allegation that Plaintiff could not have discovered defendant's conduct and filed shortly after discovery were sufficient to plead fraudulent concealment with particularity); *Brown v. Google LLC,* 525 F. Supp. 3d 1049, 1071 (N.D. Cal. 2021) (tolling claims where defendant's tracking methods were not apparent to users and its privacy policy failed to disclose the full scope of tracking).

### 2.    <u>Plaintiff has properly alleged scienter.</u>

Defendant takes the insupportable position that Plaintiff has failed to allege

scienter, as she makes no "allegations that SPD knew that the conduct of Facebook, Google, or any other third party constituted a breach of CIPA." MTD at 22. Not so. Plaintiff alleges that Defendant intentionally installed the Tracking Tools, knowing that it would "receive compensation from third parties like Facebook and Google in the form of enhanced advertising services and more cost-efficient marketing on third-party platforms in exchange for disclosing users' personally identifiable information." ¶ 160; *see also* ¶¶ 8, 78, 96 & 266-67. Numerous courts have found that the scienter requirement is satisfied through allegations like Plaintiff's that a defendant installed third-party tracking technology on its website for advertising purposes, despite knowing that the technology would disclose its website's users' personally identifiable information. *See, e.g.*, *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *18 (S.D. Cal. Dec. 18, 2024) (allegations that defendant "programmed such third-party tracking technology into its website for advertising purposes and to increase its profits" satisfied scienter); *Toy*, 2024 WL 1701263, at * 1 (allegations that defendant "purposely installed these tracking technologies to optimize its advertising and marketing" satisfied scienter).

Cases cited by Defendant do not compel a different result. None involve pixel or other comparable web tracking technology, and all involve a third-party software tool collecting information from the defendant's users without the defendant's knowledge. Moreover, whether Defendant had criminal or tortious intent when intercepting Plaintiff's communications is a factual question that is not appropriate for dismissal at this juncture. As such, Defendant's motion to dismiss Plaintiff's CIPA claim should be denied.

## C.    **Plaintiff's ECPA Claim is Sufficiently Pled Because it Meets the Crime-Tort Exception.**

Plaintiff alleges that SPD violated the ECPA, 18 U.S.C. § 2511, *et seq*., which forbids (i) interception of electronic communications, (ii) disclosure of electronic communications and (iii) using the contents of those electronic communications. *See*

¶¶ 224-61. SPD argues that there can be no ECPA liability because it was a party to the communications at issue and the crime-tort exception does not apply. *See* MTD at 14-16. However, because SPD intercepted Plaintiff's communications with the tortious purpose of invading her privacy, the one-party exemption does not apply.[7]

### 1.    *SPD's Criminal and Tortious Purpose.*

First, Defendant's acquisition of customer communications that were used and disclosed to Facebook and Google was done for purposes of committing criminal and tortious acts in violation of the laws of the United States and California, including: (i) criminal violation of HIPAA, 42 U.S.C. § 1320d-6; (ii) the California Invasion of Privacy Act ("CIPA"), California Penal Code § 630 *et seq.*; and (iii) invasion of privacy. ¶ 256.

As explained in Section A above, SPD committed the common law tort of invasion of privacy when it disclosed Plaintiff's IIHI to Facebook, Google, and other third parties through the use of Tracking Tools without Plaintiff's knowledge or consent sufficient to support the application of the crime-tort exception. *See Walgreens*, 733 F. Supp. 3d at 901-902 (holding that because plaintiffs have stated a claim for invasion of privacy "accordingly, viewing the allegations in the light most favorable to Plaintiffs, the Court concludes that the SAC pleads Defendant's tortious intent"); *see also Desert Care*, 2024 WL 1343305, at *6 (denying motion to dismiss ECPA claim where court found the one-party exemption did not apply because "Defendants disclosed these communications to Meta in violation of various state tort claims and state and federal laws" including common law invasion of privacy); *Brown*, 525 F. Supp. 3d at 1067 (finding that the crime-tort exception

---

[7] "It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication **… unless such communication is intercepted for the purpose of committing *any* criminal or tortious act in violation of the Constitution or laws of the United States or of any State**." 18 U.S.C. § 2511(2)(d) (emphasis added).

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

applies where plaintiffs had "adequately alleged that Google's association of their data with preexisting user profiles violated state law, including CDAFA, intrusion upon seclusion, and invasion of privacy.").[8]

Plaintiff also alleges that Defendant's interception of Plaintiff's communications was done with the unlawful purpose of disclosing her IIHI in violation of CIPA. This is sufficient, at the pleading stage, to support the application of the crime-tort exception. *See* ¶¶ 245-56; *see also Exer*, Ex. A at 9 (denying motion to dismiss ECPA claim and applying crime-tort exception where "[t]he Complaint alleges that the interception was done for the purpose of committing a tortious or criminal act, namely … invasion of privacy, and generally alleges intentional disclosure of such information); *Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1076 (N.D. Cal. Sept. 7, 2023) ("What [defendant's] true intent is, what steps it actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record.").

### 2.    *SPD's Criminal and Tortious Purpose Was Independent from Interception.*

SPD also argues that the crime-tort exception cannot apply because the criminal or tortious purpose was not separate and independent from the interception. *See* MTD at 14-15. But SPD misunderstands Plaintiff's allegations. Plaintiff plausibly alleges that Defendant's disclosure of her Private Information was separate

---

[8] Even were the Court to find that SPD's disclosures did not invade Plaintiff's privacy, the allegations as to its intent to do so are sufficient to support the application of the crime-tort exception. *See Prime Healthcare*, 2025 WL 103488, at *4 ("Prime Healthcare asserts that R.S. fails to allege that it actually "disclosed" her confidential information to any third party . . . However, the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious.") (citation omitted).

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

and independent from its interception. *See, e.g.*, ¶¶ 83-85, 96, 158 & 239 (SPD violated wiretap acts by "intentionally disclosing or endeavoring to disclose the electronic communications of Plaintiff and Class Members to affiliates and other third parties, while knowing or having reason to know that the information was obtained through the interception of an electronic communication").

Here, Plaintiff's allegations of disclosure—independent and separate from the interception—when done with the purpose of committing a criminal or tortious act suffice to plausibly allege the crime-tort exception to the one-party exemption and in contravention of the ECPA and CIPA. Plaintiff's allegations are consistent with the holdings of district courts in this circuit that have denied motions to dismiss wiretap claims based on similar allegations. *See, e.g.*, *Walgreen*, 733 F. Supp. 3d at 901 (recognizing that "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is ***independent*** of the intentional act of recording or interception itself" and holding that crime-tort exception applied because communications were intercepted with intent to commit the tort of invasion of privacy) (emphasis in original); *Prime Healthcare*, 2025 WL 103488, at *7 ("Prime Healthcare's intentional disclosure of the collected Private Information, which constitutes a further impropriety independent and separate from Prime Healthcare's interception. This distinction places [plaintiff's] allegations squarely within the crime-tort exception, as the intent to disclose private information predates and is distinct from the interception itself.") (internal citations omitted); *Exer*, Ex. A at 15-16 (rejecting defendant's argument that the interception was not separate from tortious and criminal purpose and denying motion to dismiss ECPA claim); *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *4 (N.D. Ill. Sept. 9, 2024) (denying motion to dismiss ECPA claim and finding that: "Even if the crime-tort exception did require an act distinct from the alleged wiretapping, Plaintiffs plausibly allege that Aspen intended to violate the HIPAA when it transmitted Plaintiffs' information to third

parties, which is distinct from the improper interception at issue in the ECPA claim.").

SPD's reliance on *Doe v. Kaiser Foundation Health Plan, Inc*., 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ("*Kaiser*") is mistaken. Unlike here where Plaintiff alleges that SPD knowingly disclosed Private Information to third parties (¶¶ 221-23), in *Kaiser* there was no allegation that defendant knew or approved of third parties collecting and using information for their own purposes. As the *Kaiser* court explained, "the remainder of this order addresses Plaintiffs' claims as based on the factual scenario in (1) –*i.e.*, that Kaiser hired third parties to collect and use information for the benefit of Kaiser," essentially hiring the third parties as vendors 2024 WL 1589982, at *7. Because the Court in *Kaiser* determined that there was no additional disclosure, only the collection of the information, it likewise found no separate criminal or tortious intent. *Id.*  In contrast, Plaintiff here alleges that SPD's interception of her communications for the purpose of disclosing that information to third parties so that those third parties could use the information to provide advertising was a violation of CIPA and an invasion of Plaintiff's privacy. *See* ¶¶ 219-20.[9] This separate disclosure, absent in *Kaiser*, is the tortious and criminal purpose that establishes the application of the crime-tort exception.

Finally, whether SPD had criminal or tortious intent when intercepting Plaintiff's communications is a factual question for discovery or an evidentiary record before being decided by the Court. *See, e.g.*, *Meta Platforms, Inc*., 690 F.Supp.3d at 1076 (noting the intent inquiry turned on "disputed questions of fact that need development on a full evidentiary record"); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d at 719 ("determination of [defendant]'s actual purpose for . . . using

---

[9] *Okash v. Essentia Health*, 2024 WL 1285779, at *5 (D. Minn. Mar. 26, 2024) is also inapposite and an outlier in Minnesota that relied on an outdated analysis of *Kurowski v. Rush System for Health*. *Id.* (granting leave to amend "to allow Okash to plead an independent connection to a tortious act, should one exist.").

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

1    the Pixel Code requires a factual undertaking").

2              **3.**     ***SPD's Financial Motive.***

3        SPD's argument that Plaintiff alleges that the primary purpose of intercepting

4 her communications was to make money is also unavailing. As courts in this District

5 have found, "even where a defendant is arguably motivated by monetary gain, the

6 crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that

7 the defendant's conduct violated state law, including state law privacy claims."

8 *Walgreens*, 733 F. Supp. 3d at 901; *see also Exer*, Ex. A at 16 ("Although the

9 Complaint also alleges a financial motivation, for pleading purposes at this motion

10 to dismiss stage, the Complaint sufficiently alleges an illegitimate purpose that was

11 at least a "determining factor" for Defendant's actions"); *Prime Healthcare*, 2025

12 WL 103488, at *7 ("Prime Healthcare's financial motivation for disclosing R.S.'s

13 Private Information does not immunize it from liability under the ECPA."); *see also*

14 *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 928 n.4 (D. Minn. 2024)

15 ("[T]he Court has serious doubts that a pecuniary purpose and an injurious purpose

16 can always be so clearly distinguished. And it defies common sense that a clearly

17 harmful act could escape liability as long as it was done for profit.").

18        Because Plaintiff has alleged the criminal and tortious disclosure of her PHI

19 and PII was separate and independent from the interception of the information, the

20 ECPA's crime-tort exception does apply and Defendant's motion to dismiss should

21 be denied.

22        **D.**     <u>**Plaintiff's Unjust Enrichment Claim is Sound.**</u>

23        District courts in the Ninth Circuit routinely allow unjust enrichment claims

24 to proceed in healthcare pixel and data misuse cases. *See, e.g.*, *Fullstory*, 712 F.

25 Supp. 3d (denying dismissal of unjust enrichment claim in a Meta Pixel action

26 alleging misuse of PII and heath data); *C.M. v. MarinHealth Med. Grp., Inc.*, 2024

27 WL 217841, at *15 (N.D. Cal. Jan. 19, 2024) (similar); *Katz-Lacabe v. Oracle Am.*,

28

*Inc.*, 2023 WL 6466195, at *6 (N.D. Cal. Oct. 3, 2023) (holding that plaintiffs sufficiently pleaded facts to establish unjust enrichment where plaintiffs would not have visited defendant's websites with surreptitiously installed tracking technologies that conferred a benefit to defendant at the expense of plaintiffs' privacy). To state a claim for unjust enrichment, Plaintiff must allege that Defendant received and unjustly retained a benefit at their expense. *See ESG Capital Partners, Ltd. P'ship v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Moreover, the Ninth Circuit has held that a plaintiff is entitled to disgorgement of unjustly earned profits regardless of whether a defendant's actions "caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the Plaintiffs' property to become less valuable." *In re Facebook*, 956 F.3d at 600; *see also Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 815 (N.D. Cal. 2011) (recognizing plaintiff whose information was misappropriated by Facebook "may properly seek restitution"); *In re Anthem Inc. Data Breach Litig.*, 2016 WL 3029783, at *14 (N.D. Cal. May 27, 2016) (finding that plaintiffs' personal information was stolen in a data breach and thus lost value, which constituted an injury to plaintiffs); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, *13-14 (N.D. Cal. Aug. 30, 2017) (same).

Here, Plaintiff alleges that the health information that Defendant disclosed to unauthorized third parties holds particularly high value, and that this monetary benefit was conferred upon Defendant by Plaintiff and the Class. ¶¶ 165-76 & 187-90. Courts routinely acknowledge the value of personal medical information and the harm that arises from the unauthorized dissemination thereof. *See, e.g.*, *Doe v. Regents of the Univ. of Cal.*, 672 F. Supp. 3d 813, 820 (N.D. Cal. May 6, 2023) ("Personal medical information is understood to be among the most sensitive information that could be collected about a person"); *In re Facebook Privacy Litigation*, 572 F. App'x 494, 494 (9th Cir. 2014) (holding that plaintiffs' allegations that they were harmed by the dissemination of their personal information and by

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

losing the sales value of that information were sufficient to show damages for their breach of contract and fraud claims). Therefore, Plaintiff has adequately alleged a claim for unjust enrichment.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss. If the Court determines any claim is inadequately pled, Plaintiff respectfully requests leave to amend. *See United States ex rel. Insoon Lee v. SmithKline Beecham, Inc.,* 245 F.3d 1048, 1052 (9th Cir. 2001) ("[L]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegations of other facts'").

Dated: February 7, 2025

**ALMEIDA LAW GROUP LLC**

*/s/Matthew J. Langley*
Matthew Langley, CA Bar No. 342846
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
Tel: (312) 576-3024
matt@almeidalawgroup.com

David DiSabato*
Tyler Bean*
**GLIMSTAD LLP**
745 Fifth Avenue, Suite 500 New York, NY 10151
T: 929-677-5144
ddisabato@sirillp.com
tbean@sirillp.com SIRI &

(*pro hac vice)

*Attorneys for Plaintiff & the Class*

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 5,991 words, which complies with the word limit of L.R. 11-6.1.

*/s/Matthew J. Langley*

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COMPLAINT