UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ROZ SAEDI, *individually and on behalf of all other similarly situated*,

Plaintiff,

v.

SPD SWISS PRECISION DIAGNOSTICS GMBH d/b/a CLEARBLUE, et al.,

Defendants.

Case No. 2:24-cv-06525-WLH-E

**ORDER RE DEFENDANT SPD'S MOTION TO DISMISS [44]**

Before the Court is Defendant SPD Swiss Precision Diagnostics GmbH's ("Defendant SPD" or "Defendant") Motion to Dismiss. (Mot., Docket No. 44). The Court took the matter under submission on February 27, 2025, thereby vacating the hearing, as well as the scheduling conference. (Docket Nos. 57, 58). For the reasons explained below, the Court **GRANTS** Defendant SPD's Motion, dismissing the action in its entirety without prejudice and with leave to amend.

///

///

I.    **BACKGROUND**

A.    **Factual Background**

Plaintiff Roz Saedi ("Plaintiff") brings the present action, individually and on behalf of all others similarly situated ("Class Members"), alleging four causes of action against Defendant SPD.  (Compl., Docket No. 1).  Those causes of action include (1) violation of the Electronic Communications Privacy Act ("ECPA"); (2) violation of California Invasion of Privacy Act ("CIPA"); (3) the common law tort of invasion of privacy – intrusion upon seclusion; and (4) unjust enrichment.  (*Id.*).

The suit revolves around Defendant SPD's alleged "unlawful practice of disclosing Plaintiff's and Class Members' confidential personally identifiable information ("PII") and protected health information ("PHI")[1] (collectively referred to as "Private Information") to third parties, including Meta Platforms, Inc., d/b/a Meta ("Facebook") and Google, Inc. ("Google"), without consent, through the use of tracking software that is embedded in [Defendant's] website for Clearblue products." (*Id.* ¶ 2).  Defendant SPD d/b/a Clearblue "own[s] and control[s]" the website (the "Website") https://www.clearblue.com/ in order to "market and sell their products[.]" (*Id.* ¶ 7).  Clearblue products "include test kits for several sensitive health conditions, including fertility, ovulation and pregnancy status."  (*Id.* ¶ 3).  The Website is available for "reviewing" as well as "purchasing" Clearblue products.  (*Id.*).  Despite selling health-related goods, Plaintiff acknowledges that Defendant SPD is not a covered entity under the Health Insurance Portability and Accountability Act ("HIPAA").  (*Id.* ¶ 148).

---

[1] The Health Insurance Portability and Accountability Act ("HIPAA") Privacy Rule defines "protected health information" as "individually identifiable health information ("IIHI") that is "transmitted by electronic media; maintained in electronic media; or transmitted or maintained in any other form or medium."  45 C.F.R. § 160.103.

*1. General Allegations Regarding the Website and Tracking Technology*

Plaintiff alleges that Defendant SPD, "[u]nbeknownst to customers," employed tracking tools ("Tracking Tools"), "including the Facebook Pixel . . . as well as the Google analytics tool, to intercept, duplicate, and re-direct Plaintiff's and Class Member's Private Information to Facebook and Google." (*Id.* ¶¶ 8, 83). Plaintiff and Class Members used the Website "to submit information related to their past, present, or future health conditions," tied to their review or purchase of pregnancy, fertility and ovulation kits. (*Id.* ¶ 9). Plaintiff alleges that, if shared with third parties, this Private Information could allow the third parties with whom it was shared, "to know that a specific customer had a specific type of medical condition such as, for example, that they are pregnant and/or trying to conceive." (*Id.*). More specifically, the "non-public Private Information" at issue includes but is not limited to "(1) sensitive health conditions; (2) desired medical services or products; (3) details of their activities on a specific Clearblue product's page and (4) the fact that they were proceeding to purchase a particular Clearblue product, including the specific retailer they chose." (*Id.* ¶ 90).

Plaintiff contends that when data from the Website is shared with a third party like Facebook, Facebook "connects user data from [Defendant SPD's] Website to the individuals' Facebook ID ("FID")," which therein contains "detailed information about the profiles owner's identity sufficient to identify them personally." (*Id.* ¶ 10). Plaintiff alleges that "Facebook tracks and collects data even on people who do not have a Facebook account or have deactivated their Facebook accounts." (*Id.* ¶ 12). Google, similarly, is alleged to "'store users' logged-in identifier on non-Google websites . . .'" when information is shared with it, which it later uses for "serving personalized ads." (*Id.* ¶ 11).[2] The information Google receives is allegedly sent "alongside Plaintiff's and Class Members' unique identifier . . . thereby allowing

---

[2] Plaintiff's Complaint quotes *Brown v. Google LLC*, 2023 WL 5029899 (N.D. Cal. Aug. 7, 2023).

1  individual customers' communications with [Defendant SPD] . . . to be linked to their

2  unique Google accounts and therefore their identity."  (*Id.* ¶ 93).

3  Plaintiff describes these technologies as functioning "like a traditional

4  wiretap[,]" as the software within the Website "intercepts those communications

5  intended only for [Defendant SPD] and transmits those communications to third

6  parties, including Facebook and Google."  (*Id.* ¶ 63).  In other words, any time a user

7  accesses a webpage that hosts Tracking Tools – such as the ones alleged to be used by

8  Defendant SPD – "the user's communications with the host webpage are

9  instantaneously and surreptitiously duplicated and sent to the third party."  (*Id.* ¶ 76).

10  Plaintiff also contends that Defendant uses Facebook's Conversions

11  Application Programming Interface ("CAPI"), which functions differently than the

12  Tracking Tools mentioned herein.  (*Id.* ¶ 15).  In general terms, CAPI "tracks the

13  user's website interaction, including Private Information, records and stores that

14  information on the website owner's servers, and then transmits the data to Facebook

15  from the website owner's servers."  (*Id.* ¶ 16).  CAPI allows website owners "to

16  circumvent any ad blockers or other denials of consent" by the user that might prevent

17  a tool such as the Pixel from sending the user's Private Information to Facebook.  (*Id.*

18  ¶ 17).  Defendant SPD purportedly "utilized the Pixel and CAPI data for marketing

19  purposes to bolster their profits . . . by utilizing data and information from users'

20  communications with the Website to build profiles for the purposes of retargeting and

21  future marketing."  (*Id.* ¶ 18).

22  Plaintiff emphasizes that "neither [she] nor any other Class Member signed a

23  written authorization permitting [Defendant SPD] to send their Private Information to

24  Facebook or Google."  (*Id.* ¶ 25).  Plaintiff alleges that the Website "assures website

25  visitors" in its Consumer Health Data Privacy Policy (the "Privacy Policy") that

26  Defendant SPD does not sell or share consumer health data with any third parties or

27

28

1    affiliates.[3]  (*Id.* ¶ 33).  Plaintiff, however, does not include a copy of the Privacy

2    Policy that was active at the time of her visits, which the Court further addresses

3    below.

4          Plaintiff contends that Defendant SPD is enriched through the arrangement, as

5    it purportedly receives "compensation from third parties like Facebook and Google in

6    the form of enhanced advertising services and more cost-efficient marketing on third-

7    party platforms in exchange for disclosing customers' personally identifiable

8    information."  (*Id.* ¶¶ 164, 160).  This has purportedly harmed Plaintiff and Class

9    Members by "diminish[ing] the value of that information," as well as creating the risk

10   of identity theft and fraud.  (*Id.* ¶¶ 181, 173-179).

11              *2.  Plaintiff's Experience with the Website*

12         Plaintiff herself visited the website on September 29, 2022, to look up and

13   purchase a Clearblue product.  (*Id.* ¶ 189).  Plaintiff has an active Facebook and

14   Google account.  (*Id.* ¶¶ 190-91).  She contends that three URL links – which reflect

15   her activity on the Website – were disclosed to Meta and Google, along with her IP

16   address and Facebook ID, allowing her to be identified as the individual visiting those

17   links.  (*Id.* ¶¶ 192-93).  The alleged interceptions and disclosures were completed

18

19   [3] As explained below in greater detail, Plaintiff appears to selectively quote from the
     Supplemental Health Privacy Policy in making this allegation, which was not in effect
20   at the time of her visit.  (*see* Decl. of James M. Brennan in Supp. of Mot. ("Brennan
     Decl."), Docket No. 44-1 ¶ 7).  Though a court is to assume the veracity of well-
21   pleaded allegations, "[t]he court need not . . . accept as true allegations that contradict
     matters properly subject to judicial notice or by exhibit."  *Sprewell v. Golden State
22   Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  The Court, therefore, does not accept as
     true the allegation that Defendant SPD made such an assurance.  Nor does Plaintiff
23   address this in her Opposition Brief; Defendant SPD raised the issue that the
     assurances Plaintiff alleges originate from a policy not in effect at the time of her visit.
24   "[I]n most circumstances, failure to respond in an opposition brief to an argument put
     forward in an opening brief constitutes waiver or abandonment in regard to the
25   uncontested issue."  *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802
     F.Supp.2d 1125, 1132 (C.D. Cal. 2011) (citations and quotations omitted); *see also
26   Kroeger v. Vertex Aerospace LLC*, 2020 WL 3546086, at *8 (C.D. Cal. June 30, 2020)
     (collecting cases holding that party conceded argument by failing to address it in
27   opposition brief).  The Court, therefore, considers this point conceded.

28

1    "without Plaintiff's knowledge, consent or express written authorization." (*Id.* ¶ 197).

2    After her visits to the Website, "Plaintiff observed advertisement on her Facebook

3    account related to the products she sought and received," including ads for the same

4    product produced by other companies and by Defendant SPD. (*Id.* ¶ 199).

5        Plaintiff contends that she was "deceived" and "ignorant of the information

6    essential to pursue [her] claims, without any fault or lack of diligence on her part."

7    (*Id.* ¶ 205). This is because the Tracking Tools allegedly "were and are entirely

8    invisible to a website visitor." (*Id.* ¶ 203). She states that the "earliest" she could

9    have reasonably discovered the conduct "would have been shortly before the filing of

10   this Complaint when she spoke about Defendant's violations with her counsel in June

11   2024." (*Id.* ¶ 209).

12            *3. Defendant SPD's Privacy Policies at the Time of Plaintiff's Visit*

13       Defendant SPD's Website has two relevant privacy policies which are

14   implicated in the Complaint. (Mot., Docket No. 44 at 3). Though Plaintiff selectively

15   references Defendant SPD's Privacy Policy and supplemental health privacy policy

16   (the "Supplemental Health Privacy Policy") throughout the Complaint, she attaches no

17   copy. Defendant SPD attached copies of both the Privacy Policy and Supplemental

18   Health Privacy Policy, including both the present iterations and the versions in effect

19   during Plaintiff's visit to the Website,[4] seeking to apply the doctrine of incorporation

20   by reference. (Decl. of James M. Brennan in Supp. of Mot. ("Brennan Decl."),

21   Docket No. 44-1 ¶¶ 3-11 & Exs. 1-7).

22

---

23   [4] Defendant utilizes the application known as Wayback Machine, which archives
24   webpages and allows one to view a webpage as it existed on a specific day. (*See*
     Brennan Decl. ¶¶ 3-11). *See, e.g., Virun, Inc. v. Cymbiotika, Inc.*, 2022 WL
25   17371057, at *3 n.3 (C.D. Cal. Aug. 18, 20220 ("Per its website, the Wayback
     Machine is 'a service that allows people to visit archived versions of Web sites.
26   Visitors to the Wayback Machine can type in a URL, select a date range, and then
27   begin surfing on an archived version of the Web.' Internet Archive, Wayback
     Machine General Information, https://help.archive.org/help/wayback-machine-
28   general-information/ (last visited Aug. 14, 2022)").

"Incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those same documents that weaken their claims. *Id.* A document may be deemed incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). To qualify as "extensively referenced," the complaint must cite the document at least more than once or quote from it at length; merely mentioning the existence of a document is insufficient. *Id.* at 1002-04. A document forms the basis of a claim when it serves as the foundation for an element of the claim. *See id.* at 1005.

Here, SPD's Privacy Policy and Supplemental Health Privacy Policy are incorporated by reference because Plaintiff cites to them at least twice. (Compl. ¶¶ 32, 33, 35, 121, 216(c), 216 (j), 216(k), 257). Furthermore, they form the basis of her claims in that whether the policy discloses Defendant's use of any tracking tools is critical for establishing Defendant's potential liability. Defendant provides copies of the current Privacy Policy and the one in effect at the time of Plaintiff's visits to the Website. (Brennan Decl., Docket No. 44-1 ¶¶ 3, 5 & Exs. 1, 3). *See, e.g., A.S. v. SelectQuote*, 2024 WL 3881850, at *4 n.4 (S.D. Cal. Aug. 19, 2024) (collecting cases considering website privacy policies under judicial notice and incorporation by reference, including the effective date of policies); *see also Love v. Ladder Fin. Inc.*, 2024 WL 2104497, at *2 n.2 (N.D. Cal. May 8, 20240) (incorporating the privacy policy by reference where the "Complaint quotes selectively from the Privacy Policy"). The Court, therefore, considers these exhibits incorporated by reference.[5]

---

[5] Notably, Plaintiff did not lodge any objections to the exhibits or the facts drawn from them.

The Website's general Privacy Policy that was in effect at the time of Plaintiff's visit[6] informs consumers about the types of information that may be "collected by [Defendant SPD] and [its] partners on" the Website.  (Brennan Decl. ¶ 3 & Ex. 1 at 1).  In bold, it states that "[b]y using this site . . . you accept the terms of the current policy as posted on this page[,]" including the Terms of Use that apply.  (*Id.* at 2).

In addition to detailing the types of Personal Information the site may collect if voluntarily provided – including name, address, telephone number, banking information, screen name, date of birth, email, health information, including information related to product usage, and communication preferences – the Privacy Policy includes a section entitled "Other Information [Defendant SPD] May Collect." (*Id.* at 4).  The section states that "[t]his site may also collect other information from you, for example, [Defendant SPD] may track information about the date and time you access our site, the type of web browser you use, and the site from which you connect to our site using cookies."  (*Id.*).  It goes on to state that "[Defendant SPD] may use cookies to collect information during your visit to this site, such as information about which site areas you visit and the services you use through the site. SPD collects this information to help tailor the site and our products and services to your needs and interest."  (*Id.*).

Further, to assist Defendant SPD in "improv[ing] how [it] promote[s] [its] site," the Website "may measure . . . what you clicked on within the site."  (*Id.* at 5). Providing greater specifics, the Privacy Policy explains that "[s]ome of the pages you visit may also collect information using pixel tags (also called "clear gifs") that may

---

[6] The Wayback Machine capture is from October 12, 2022, and the banner at the top of the page indicates the policy was "Last Amended 21st December 2020."  (Brennan Decl. ¶ 3 & Ex. 1 at 1).  Where Plaintiff visited the site on September 29, 2022 (*see* Compl. ¶ 189), this means that this is the version of the Privacy Policy in effect at the time of Plaintiff's visit.  (*Id.*).  Further, Defendant SPD also attached a Wayback Machine capture from January 18, 2021 – from before Plaintiff's visit – which demonstrates that the Privacy Policy remained consistent from between at least January 18, 2021, and October 12, 2022.  (Brennan Decl. ¶ 4 & Ex. 2).

be shared with partners who directly support [Defendant SPD's] promotional activities
and site development." (*Id.*). The section concludes by stating that "[t]he information
collected using these pixel tags is not personally identifiable although it could be
linked to your Personal Information." (*Id.*).

The Website also maintains a Supplemental Health Privacy Policy, which was
not enacted until 2024.[7] This Supplemental Health Privacy Policy was not in effect,
therefore, during Plaintiff's visit to the Website in 2022. (Brennan Decl. ¶ 7).
Plaintiff does not dispute this fact. The Supplemental Health Privacy Policy describes
what health data is collected – including product interests, potential health conditions
or treatments, reproductive sexual health information, and more – and for what
purpose. (*Id.* ¶ 7 & Ex. 4 at 1-2). One of the stated purposes includes "Serving Ads,
including serving you with relevant ads about our brands and programs." (*Id.* at 3).
Under the section entitled "Disclosures of Consumer Health Data," it is indicated that
Defendant SPD does not "sell your Consumer Health Data" or "share your Consumer
Health Data with any Third Parties or Affiliates." (*Id.* at 5).

### B.    Procedural Background

Plaintiff filed the present action on August 1, 2024. (Compl., Docket No. 1).
The Complaint originally named Defendant SPD, along with Abbott Laboratories and
Proctor & Gamble Co. (*Id.*). The Court granted the parties' stipulations to extend
Abbott Laboratories' and Proctor & Gamble Co.'s time to respond. (Order, Docket
No. 36). Plaintiff, however, ultimately filed a notice of voluntary dismissal and
stipulation to dismiss as to Abbott Laboratories and Proctor & Gamble Co. on October
24, 2024. (Notice of Dismissal, Docket Nos. 39, 40). That same day, Defendant SPD
returned a waiver of service, such that it had until December 23, 2024, to respond.

---

[7] Defendant SPD attaches a Wayback Machine capture from April 8, 2024, which is
the "earliest capture of the Supplemental Health Privacy Policy available on Wayback
Machine." (Brennan Decl. ¶¶ 6-7, Ex. 4).

(Waiver of Service, Docket No. 38).  On December 23, 2024, Defendant SPD filed the Motion to Dismiss presently before the Court.  (Mot., Docket No. 44).

## II.   DISCUSSION

Before the Court is Defendant SPD's Motion to Dismiss.  (Mot., Docket No. 44).  The Motion is fully briefed.  For the reasons explained below, the Court **GRANTS** Defendant SPD's Motion, dismissing all causes of action without prejudice and with leave to amend.

### A.   <u>Legal Standard</u>

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  The complaint need not include detailed factual allegations but must provide more than a "formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  Dismissal under Rule 12(b)(6) is appropriate "only when [the complaint] fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories."  *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

"[The] court must 'draw all reasonable inferences in favor of the nonmoving party'" and take its non-conclusory allegations as true.  *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)).  The court is not required, however, "to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . .").  Further, the court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Pursuant to Rule 15(a)(2), when a motion to dismiss is granted, courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A district court has discretion to deny leave to amend, however, due to "…futility of amendment[,]" among other reasons. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

**B.   Analysis**

The Court will address each of the four causes of action in turn, beginning with the third cause of action for invasion of privacy – intrusion upon seclusion. The Court next addresses the second and first causes of action, for CIPA and ECPA violations, respectively, and concludes with the fourth cause of action for unjust enrichment. For the reasons explained below, the Court **GRANTS** Defendant SPD's Motion, dismissing the action in its entirety without prejudice and with leave to amend.

*1.   Plaintiff Fails to State a Claim with Respect to the Third Cause of Action for Invasion of Privacy – Intrusion upon Seclusion*

To state a claim for invasion of privacy – intrusion upon seclusion, a plaintiff must allege (1) the defendant intentionally intruded into a place, conversation, or matter as to which plaintiff has a reasonable expectation of privacy; and (2) the intrusion was highly offensive to a reasonable person and sufficiently serious and unwarranted "to constitute an egregious breach of the social norms." *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 286 (2009); *see also Shulman v. Group W. Prods., Inc.*, 18 Cal.4th 200, 231 (1998). To be actionable, the plaintiff must have had "an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Shulman*, 18 Cal.4th at 232. Under California law, "a claim for intrusion upon seclusion does not require a publication, but instead 'the intrusion itself makes the defendant subject to liability.'" *Graham v. Sunnova Energy Int'l, Inc.*, 2024 WL 871858, at *12 (E.D. Cal. Feb. 28, 2024) (quoting *Nayab v. Capital One Bank USA, N.A.,* 942 F.3d 480, 491 (9th Cir. 2019)).

As a preliminary matter, it is important to clarify what the alleged intrusion amounts to.  Plaintiff alleges that she and Class Members "communicated sensitive and protected medical information and individually identifiable information that they intended for only Defendant to receive and that they understood Defendant would keep private." (Compl. ¶ 279).  In other words, the "disclosure of the substance and nature of those communications to third parties" is the alleged intrusion.  (*Id.* ¶ 280).

Defendant SPD argues that there can be no intrusion into "communications to which defendant was a party." (Mot. at 23; Compl. ¶ 247).  The Court agrees with Defendant for the reasons explained below.

Defendant cites to a handful of district court cases demonstrating that in instances in which a plaintiff voluntarily provides information to a defendant, there can be no "intrusion" for purposes of an invasion of privacy claim.  *See, e.g., Steinberg v. CVS Caremark Corp.*, 899 F.Supp.2d 331, 342-43 (E.D. Pa. 2012) (voluntary disclosure of information to defendant precluded intrusion upon seclusion claim, even where information sold to third parties); *Kurowski v. Rush System for Health*, 659 F.Supp.3d 931, 943-44 (N.D. Ill. 2023) (dismissing intrusion upon seclusion claim where the "allegedly intercepted communications were intended to reach [the defendant]," such that there was no intrusion); *Allen v. Novant Health, Inc.*, 2023 WL 5486240, at *2 (M.D.N.C. Aug. 24, 2023) (dismissing intrusion upon seclusion claim "[b]ecause the plaintiffs acknowledge in the complaint that they voluntarily provided their information directly to [defendant]," such that there can be no intrusion); *Williams v. TMC Health*, 2024 WL 4364150, at *7 (D. Ariz. Sept. 30, 2024) (finding that the allegations that defendant used embedded tracking technologies on its website were insufficient to state a claim for invasion of privacy because no intrusion by defendant, but rather by the technology company).  This is because it is the *intrusion* itself that forms the basis of an intrusion upon seclusion claim.  *Graham*, 2024 WL 871858, at *12 (quoting *Nayab,* 942 F.3d at 491).  Defendant SPD argues, therefore, that it cannot possibly "intrude" if it was inherently

1    intended to receive Plaintiff's and Class Members' communications with the Website,

2    as alleged in the Complaint.  (*see* Compl. ¶ 247).

3        Plaintiff disagrees, first arguing that the cases cited to by Defendant are

4    unavailing because they apply the law of different states, rather than California.

5    (Opp'n to Mot., Docket No. 50 at 6).  Defendant SPD clarifies that the Supreme Court

6    of California adopted "the formulation of the intrusion upon seclusion tort in Section

7    652(B) of the Second Restatements of Torts, and California's common law shares

8    precisely the same elements with the common law of other states which also adopt the

9    Restatement.  *See Shulman v. Grp. W. Prods., Inc.*, 955 P.2d 496, 489 (Cal. 1998)

10   (adopting Restatement)."  (Reply, Docket No. 52 at 13).  Upon examination of each

11   case, the formulation of the standard to plead an intrusion by seclusion claim is

12   essentially identical.  Thus, the Court disagrees with Plaintiff; those cases are

13   persuasive.

14       Plaintiff next argues that district courts in this circuit have "held that alleging

15   the use of Tracking Tools identical to those used by [Defendant SPD] to disclose IIHI

16   almost indistinguishable from that disclosed here is sufficient to state a claim for

17   common law invasion of privacy."  (Opp'n to Mot. at 6).  Plaintiff cites to two cases

18   to support that proposition – *Cousin v. Sharp Healthcare* ("*Cousin*"), 702 F.Supp.3d

19   967 (S.D. Cal. 2023) and *Gaige v. Exer Holding Co., LLC* ("*Exer*"), 2025 WL 559719

20   (C.D. Cal. Jan. 30, 2025).  The Court finds both distinguishable.

21       In *Cousin*, the plaintiff was a patient of the defendant hospital that operated a

22   website.  *Cousin*, 702 F.Supp.3d at 971.  The website allowed patients to search for

23   health care providers, schedule medical appointments and conduct "health care related

24   matters."  *Id.*  The plaintiff alleged that the defendant hospital used tracking tools

25   similar to those alleged in the instant matter to "collect their, and other patients',

26   sensitive health information."  *Id.* at 971.  There, however, the defendant hospital did

27   not move to dismiss on the grounds that there was no intrusion, as Defendant SPD

28   here; rather, the defendant hospital argued that the intrusion was not "highly

offensive." *Id.* at 973.  The court emphasized that the question of whether an intrusion

is "highly offensive" cannot be resolved at the pleading stage, declining to dismiss the

claim.  *Id.* at 974.  Thus, the argument was never raised that there can be no intrusion

where the defendant is the intended recipient of the communications.  The burden of

raising arguments rests with the parties, not with courts, such that if an argument is

never raised, it need not be addressed.  *See, e.g., U-Haul Co. of Nevada, Inc. v.

Gregory J. Kamer, Ltd.,* 2013 WL 4505800, at *2 (D. Nev. Aug. 21, 2013).  The

Court, therefore, agrees with Defendant SPD that this case does not bear on the issue

of "intrusion" by an intended recipient of a communication, given that it was simply

not addressed.

The facts of *Exer* are nearly identical to those of *Cousin*.  2025 WL 559719, at

*1-2.  In *Exer,* the defendant health care system was alleged to have used tracking

tools similar to those in the instant matter to "intercept the contents of patients

communications, view patients' private information, mine it for purposes unrelated to

healthcare, and monetize it to deliver targeted advertisements." *Id.*  Just as in *Cousin*,

the defendant health care system moved to dismiss based on the argument that the

disclosures were not "highly offensive" such that they were, thus, not actionable.[8]  *Id.*

at *7.  The court concluded, as in *Cousin*, that the question was not appropriately

determined at the pleading stage.  *Id.*  For the same reason that *Cousin* fails to rebut

Defendant SPD's argument, so does *Exer.*

Because one cannot logically intrude into communications to which they are a

party, the Court finds Plaintiff failed to sufficiently plead a claim for intrusion upon

seclusion.  *See, e.g., Steinberg*, 899 F.Supp.2d at 342-43; *Kurowski*, 659 F.Supp.3d at

943-44; *Graham*, 2024 WL 871858, at *12 (emphasizing the intrusion itself is what

---

[8] Though the Court need not reach the factual differences between the cases, there is
undoubtedly a factual distinction between a hospital or health care system portal as
compared to a website merely selling health-related products and providing health-
related information.  (*see* Compl. ¶ 7)

subjects a defendant to liability).  The Court, therefore, **GRANTS** Defendant's

Motion to Dismiss without prejudice, with respect to the third cause of action for

intrusion upon seclusion.  As this is the first motion to dismiss in this matter addressed

by the Court and given the extreme liberality this Court must use in granting leave to

amend, the Court **GRANTS** leave to amend.

### 2. *Plaintiff Fails to State a Claim with Respect to the Second Cause of Action for Violation of CIPA*

CIPA, much like ECPA, broadly prohibits different forms of wiretapping and

communication interception.  *See* Cal. Pen. Code § 631.  Section 631(a) contains four

clauses, the first three of which speak to prohibited forms of wiretapping and

communication interception.  *Id.* § 631(a); *see also Cody v. Boscov's, Inc.*, 658

F.Supp.3d 779, 782 (C.D. Cal. 2023) (describing the first three clauses of Section

631(a) as prohibiting "'intentional wiretapping,' 'willfully attempting to learn the

contents or meaning of a communication in transit over wire," and/or "attempting to

use or communicate information obtained as a result of engaging in either of the two

previous activities'") (quoting *In Re Google Assistant Privacy Litig.*, 457 F.Supp.3d

797, 825 (N.D. Cal. 2020)).  The fourth clause of Section 631(a) penalizes anyone

who "aids, agrees with, employs, or conspires with any person or persons to

unlawfully do, or permit, or cause to be done" any of the aforementioned prohibited

acts.  Cal. Pen. Code § 631(a).  "CIPA has a one-year statute of limitations."  *Javier v.*

*Assurance IQ, LLC* ("*Javier*"), 649 F.Supp.3d 891, 901 (N.D. Cal. 2023) (granting

motion to dismiss CIPA claim against defendant website operator due to the claim

falling outside the statute of limitations); *see also* Cal. Civ. Proc. Code § 340(a).

Here, Plaintiff seizes on this fourth clause, alleging that Defendant SPD "aided,

employed, agreed with, and conspired with Facebook, Google and likely other third

parties to track and intercept Defendants' customers' internet communications via the

Tracking Tools while their customers are/were using the Website."  (Compl. ¶ 152).

Defendant moves to dismiss, arguing that the Plaintiff's claim facially falls outside of

the one-year statute of limitations.[9]  (Mot., Docket No. 44 at 17).  Plaintiff argues that both the delayed discovery rule and the fraudulent concealment doctrine apply, such that the statute of limitations does not preclude the CIPA claim.  (Opp'n to Mot., Docket No. 50 at 8).  Plaintiff alleges that the "earliest" she could have "reasonably discovered [Defendant SPD's] conduct would have been shortly before the filing of this Complaint when she spoke about [Defendant SPD's] violations with her counsel in June 2024."  (Compl. ¶ 209).  The Court agrees with Defendant SPD.

> ### a. Delayed Discovery Is Inapplicable, Given Plaintiff's Constructive Notice of Defendant's Privacy Policy

"To invoke the delayed discovery doctrine, a plaintiff must plead facts to show that '(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'"  *Javier*, 649 F.Supp.3d at 901 (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 808 (2005)).  "[T]he delayed discovery doctrine 'only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action.'"  *Id.* (quoting *Fox*, 35 Cal.4th at 808).

"A plaintiff has inquiry notice 'when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her.'"  *Id.* (quoting *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1110 (1988)).  "[U]nder the delayed discovery doctrine, knowledge of <u>injury</u>, not knowledge of a particular defendant's role in the injury, triggers inquiry notice."  *Id.* (emphasis in original).  "'The question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discover rule is a question of fact unless the evidence can support only one reasonable conclusion.'"  *Id.* (quoting *Ovando v. Cnty. of Los Angeles*, 159 Cal.App.4th 42, 61 (2008)).

---

[9] Defendant SPD also argues that Plaintiff has failed to properly allege scienter necessary to establish this violation, but the Court need not reach that argument at this time, finding the claim time-barred and tolling inapplicable.  (*see* Mot. at 21-23).

In *Javier*, the plaintiff visited the defendant's website to obtain a life insurance quote. *Javier*, 649 F.Supp.3d at 894.  The defendant allegedly utilized a third party's software ("Software") that recorded all visitors' "'keystrokes, mouse clicks, data entry, and other electronic communications of visitors to websites'" which "'begins the moment a user accesses or interacts with' a website." *Id.* at 894-95.  The plaintiff visited the website in January of 2019. *Id.* at 895.  In April 2020, the plaintiff sent a letter through counsel to the defendant, alleging violations of the Telephone Consumer Protection Act. *Id.*  At that time, the plaintiff received a recording of the activities of his website visit, confirming the use of tracking software. *Id.*  The plaintiff subsequently filed his action, which included a claim for a CIPA violation, on April 24, 2020. *Id.* at 901.  As the claim fell outside of the one-year statute of limitations on its face, the plaintiff had to plead facts to toll the statute of limitations. *Id.*  Invoking the delayed discovery doctrine, the plaintiff argued that, though he "'assumed'" that the defendant was collecting his information, he "was unaware of the precise injury at issue following his visit to the website because he 'did not know that [the Software] was installed on the website when he visited the site.'" *Id.* at 902.  The court concluded that the plaintiff's awareness of the defendant website's information collection meant he had "constructive notice" of the privacy policy, which disclosed the potential use of third parties to collect information. *Id.*  The constructive knowledge of the privacy policy was sufficient to provide inquiry notice. *Id.*  The court emphasized that "[i]t is of no consequence, too, that [the plaintiff] did not know [the Software's provider] was the third party involved." *Id.*

Defendant SPD analogizes to *Javier*, arguing that Plaintiff has failed to plead facts sufficient to invoke the delayed discovery doctrine, given her "constructive, if not actual, notice of the Website's Privacy Policy, which discloses the possibility that information 'may be shared with partners' like Facebook or Google."  (Mot. at 21).  Plaintiff attempts to distinguish *Javier*, arguing that, unlike the plaintiff in *Javier*, "Plaintiff does not allege any knowledge of SPD's use of Tracking Tools prior to June

2024."[10]  (Opp'n to Mot. at 9).  The Court agrees with Defendant for the reasons explained herein.

Plaintiff first visited the website on September 29, 2022.  (Compl. ¶ 189).  At the time of her visit, the Website maintained a Privacy Policy explicitly stating that information may be "collected by [Defendant SPD] and [its] partners on" the Website. (Brennan Decl. ¶ 3 & Ex. 1 at 1).  In bold, it states that "[b]y using this site . . . you accept the terms of the current policy as posted on this page[,]" including the Terms of Use that apply.  (*Id.* at 2).  It goes on to state that "[Defendant SPD] may use cookies to collect information during your visit to this site, such as information about which site areas you visit and the services you use through the site.  SPD collects this information to help tailor the site and our products and services to your needs and interest."  (*Id.*).  Further, to assist Defendant SPD in "improv[ing] how [it] promote[s] [its] site," the Website "may measure . . . what you clicked on within the site."  (*Id*. at 5).  Providing greater specifics, the Privacy Policy explains that "[s]ome of the pages you visit may also collect information using pixel tags (also called "clear gifs") that may be shared with partners who directly support [Defendant SPD's] promotional activities and site development."  (*Id.*).  The section concludes by stating that "[t]he information collected using these pixel tags is not personally identifiable although it could be linked to your Personal Information."[11]  (*Id.*).

---

[10] Plaintiff also cites to three cases to argue that courts have found allegations similar to hers sufficient to establish tolling.  *See B.K. v. Desert Care Network*, 2024 WL 1343305, at *5 (C.D. Cal. Feb. 1, 2024); *A.J. v. LMND Med. Grp., Inc.*, 2024 WL 4579143, at *2 (N.D. Cal. Oct. 25, 2024); *Doe v. FullStory, Inc.*, 712 F.Supp.3d 1244, 1256, n.9 (N.D. Cal. 2024).  All of these cases are inapposite because the plaintiffs in those cases provided sufficient allegations regarding the misleading nature of the privacy policy; here, Defendant SPD's Privacy Policy was transparent, and Plaintiff's contentions to the contrary are contradicted by the privacy policy in effect at the time..
[11] Plaintiff also argues that Defendant SPD's Privacy Policy did not make clear that the information collected by pixel is not personally identifiable.  (Opp'n at 10). Plaintiff, however, selectively quotes the language, leaving out the final phrase that the information "could be linked to your Personal Information."  (*Id.*).  The Court, therefore, rejects this argument, as it misrepresents the nature of the Privacy Policy.

First, just as in *Javier*, Plaintiff does allege general knowledge that the Website collected information visitors shared with it.  (Compl. ¶ 154) (" . . . at all times when Plaintiff and Class Members provide their PII and PHI to Defendants, they each had a reasonable expectation that the information would remain confidential . . ."; *see Javier*, 649 F.Supp.3d at 902 (emphasizing that the determining factor for purposes of inquiry notice was not that the plaintiff knew the software was on the website, but that the information was being collected at all).  In other words, the Complaint makes clear Plaintiff and Class Members contemplated that information submitted to the Website would be stored.  Thus, the fact that Plaintiff did not "plead knowledge" of tracking tools fails to distinguish the case from *Javier,* where the plaintiff in that case merely indicated he assumed the defendant website collected his information.  As in *Javier*, thus, Plaintiff's recognition that the Website collected her information is sufficient to provide constructive notice of the Privacy Policy, such that Plaintiff had inquiry notice upon visiting the Website.  *Id.* at 902.

Defendant notes that an additional reason Plaintiff had inquiry knowledge of injury around the time when she visited the Website is that shortly after her visit to the Website, she began seeing ads for Clearblue products on Facebook.  (Mot. at 21; Compl. ¶ 199).  Thus, even assuming that Plaintiff did not have inquiry notice at the exact moment she visited the Website, she surely had inquiry notice when she began seeing ads.  *Javier*, 649 F.Supp.3d at 901 (quoting *Jolly*, 44 Cal.3d at 1110).  The fact that she could not see the tools on the Website does not mean that Plaintiff was unable to have made earlier discovery, particularly where there were signs of potential injury following her visit to the Website.  When coupled with the explicit information on the Website regarding data collection and sharing, this appears to be even greater inquiry notice than the situation presented in *Javier*.  Thus, the Court finds that the facts support only one conclusion, which is that Plaintiff should have reasonably known of her injury around the time of her visit to the Website in September 2022.  *Id.* (quoting *Ovando v. Cnty. of Los Angeles*, 159 Cal.App.4th 42, 61 (2008)).  The delayed

discover doctrine is, accordingly, unavailable to toll the statute of limitations, such that her CIPA claim is untimely.

### b. Fraudulent Concealment Is Insufficiently Pled

A plaintiff alleging fraudulent concealment to toll the statute of limitations must "plead with particularity 'facts showing that [(1)] [the defendant] affirmatively misled it, and that [(2)] [the plaintiff] had neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts.'" *Lau v. Gen. Digital Inc.* ("*Lau*"), 2023 WL 10553772, at *3 (N.D. Cal. Sept. 13, 2023) (quoting *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.,* 858 F.2d 499, 505 (9th Cir. 1988)). "'The second element requires the plaintiff to allege (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry.'" *Id.* (quoting *Cmty. Case v. Boatwright,* 124 Cal.App.3d 888, 899 (1981)). Further, fraudulent concealment requires conduct "'above and beyond the wrongdoing upon which the plaintiff's claim is filed'" that "'prevent[s] the plaintiff from suing in time.'" *Id.* (quoting *De Los Reyes v. Ruchman & Assocs., Inc.,* 2014 WL 4354238, at *5 (N.D. Cal. Sept. 2, 2014)).

Plaintiff argues that Defendant SPD "took affirmative steps to hide the Tracking Tools from users of its Website . . . by 'seamlessly integrat[ing the tracking tools] into the Website such that there was no reason for Plaintiff or any Class Member to be aware of or to discover their presence.'" (Opp'n to Mot. at 11; Compl. ¶ 182). Because the tools were "deliberately hidden from view and were beyond the capacity of the average consumer to investigate or discover," Plaintiff argues that the statute of limitations should be tolled until June 2024 when she "discovered her claim." (Opp'n to Mot. at 11; Compl. ¶¶ 202-209).

Defendant argues that (1) there are insufficient allegations that Defendant SPD engaged in affirmatively misleading conduct, (2) that Plaintiff merely presents

conclusory allegations and (3) that Plaintiff fails to plead with particularity how she discovered the alleged conduct.  (Mot. at 19).  The Court agrees with Defendant for the reasons explained below, such that the fraudulent concealment doctrine is similarly unavailable to Plaintiff to toll the statute of limitations.

First, as Defendant SPD highlights, to the extent that the language in the Supplemental Health Privacy Policy could be affirmatively misleading (*see* Compl. ¶¶ 33, 216, 257), that policy was not in place when Plaintiff visited the Website. (Brennan Decl. ¶ 7; Mot. at 19).  Plaintiff does not contest this fact.  Accordingly, any statement in that policy cannot be a basis to toll the statute of limitations.

Further, Defendant argues that Plaintiff merely states in a conclusory fashion that she was "ignorant of the information essential to pursue [her] claims, without any fault or lack of diligence on her part[.]"  (Mot. at 19; Compl. ¶ 205).  In *Lau*, the district court found nearly verbatim allegations to be insufficient to establish the second element of the fraudulent concealment doctrine.  *Lau*, 2023 WL 10553772, at *3.  This is because it was both conclusory and failed to meet the required particularity.  *Id.*

To that end, Plaintiff fails to plead with particularity *any* details surrounding her discovery of the alleged conduct.  Plaintiff merely states that the earliest that she could have become aware of the injury was in June 2024.  (Compl. ¶ 209).  This does not establish when or how the alleged fraud was discovered, as required by the fraudulent concealment doctrine.  *See Lau*, 2023 WL 10553772, at *3 ("Plaintiffs also nowhere allege when the alleged fraud was discovered or how it was discovered").  To state that she only could have discovered the injury in June 2024 fails to account for the fact that "[f]ollowing her visits to [Defendant SPD's] Website, Plaintiff observed advertisements on her Facebook account related to the products she sought and received through webpages she viewed and accessed on Defendants' Website," specifically ads for the products she had viewed on the Website.  (Compl. ¶ 199).

Nor does Plaintiff sufficiently allege how Defendant SPD's conduct went "'above and beyond the wrongdoing upon which the plaintiff's claim is filed'" which "'prevent[ed] the plaintiff from suing in time.'" *Lau*, 2023 WL 10553772, at \*5 (quoting *De Los Reyes,* 2014 WL 4354238, at \*5).  The only conduct alleged is the installation of Tracking Tools, which is the same alleged wrongdoing that forms the basis of the CIPA claim.  (Compl. ¶ 182).

Plaintiff cites to *Brown v. Google LLC* to argue that courts "have recognized that similar technical deception prevents users from acquiring notice of privacy violations." (Opp'n at 11); *Brown v. Google LLC*, 525 F.Supp.3d 1049, 1071 (N.D. Cal. 2021).  *Brown*, however, is inapposite because in that case, the plaintiff had alleged that the defendant had made affirmative misrepresentations regarding private browsing.  *Id.* at 1070.  *Id.*  Here, Plaintiff has failed to sufficiently allege affirmative misrepresentations, where Defendant SPD discloses its collecting and sharing practices.

Plaintiff's citation to *Exer* is unavailing for similar reasons.  *See Exer*, 2025 WL 559719, at \*3-4.  In *Exer*, the court concluded that the embedding of invisible Tracking Tools demonstrated affirmative steps to hiding its tracking activities such that the plaintiff could not have discovered the conduct.  *Id.* at \*4.  The court, however, did not discuss the defendant's privacy policy, if any, and whether it disclosed its collection and sharing of data.  Here, where Defendant SPD discloses its collecting and sharing practices – even if it also relies on embedded "invisible" Tracking Tools as in *Exer* – it is distinguishable.

In sum, Plaintiff has not sufficiently demonstrated the applicability of the fraudulent concealment doctrine or the delayed discovery doctrine for the reasons explained herein.  As such, the CIPA claim is facially time-barred by the one-year statute of limitations.  *See Javier*, 649 F.Supp.3d at 901.  The Court, therefore, **GRANTS** Defendant SPD's Motion to Dismiss without prejudice, with respect to the second cause of action for a violation of CIPA.  While the Court harbors serious doubt

about whether Plaintiff can amend the Complaint in order to sufficiently allege the applicability of these tolling doctrines, the Court **GRANTS** leave to amend in the event that she can.

### 3. Plaintiff Fails to State a Claim with Respect to First Cause of Action for Violation of ECPA

ECPA prohibits the intentional interception of electronic communications, as well as disclosure or use of their contents, if it was known, or if there was reason to know, that the communication was intercepted in violation of the statute.  18 U.S.C. § 2511(1)(a)-(e).  The statute exempts, however, any interception carried out by a person who "is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any state." *Id.* § 2511(2)(d).  Thus, while a party to a communication may be exempt (the "Party Exemption"), there is an exception applied if the interception was carried out for the purpose of committing a criminal or tortious act in violation of the law (the "Crime-Tort Exception").

"'Congress intended the consent requirement to be construed broadly.'" *Sporer v. UAL Corp.*, 2009 WL 2761329, at *5 (N.D. Cal. 2009) (quoting *Griggs-Ryan v. Smith*, 904 F.2d 112, 116 (1st Cir. 1990)).  The statute "exempts from coverage, not only surveillance of those persons who explicitly consent, but also of those who implicitly consent." *Id.*  "Implied consent may be inferred 'from the surrounding circumstances indicating that the [party] knowingly agreed to the surveillance.'" *Id.* (quoting *Griggs-Ryan*, 904 F.2d at 116-17).  "'Circumstances showing consent will ordinarily include 'language or acts which tend to prove . . . that a party knows of, or assents to, encroachments on the routine expectation that conversations are private.'" *Id.* (quoting *Griggs-Ryan*, 904 F.2d at 117).

For the Crime-Tort Exception to apply, a plaintiff must plausibly allege that the interception at issue was undertaken for a criminal or tortious purpose, which is independent of the interception itself.  *See, e.g., In re Google Inc. Cookie Placement Privacy Litigation*, 806 F.3d 125, 145 (3rd Cir. 2015) (emphasizing that "all authority of which [the court is] aware indicates that the criminal or tortious acts contemplated by § 2511(2)(d) are acts secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits"); *see also Pena v. GameStop, Inc.*, 670 F.Supp.3d 1112, 1120 (S.D. Cal. 2023) (dismissing ECPA claim where party exception applied and plaintiff failed to allege that the underlying alleged tortious conduct was separate from the interception itself).  "The existence of a lawful purpose does not sanitize an interception that was made for an illegitimate purpose." *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 797 (N.D. Cal. 2022).  However, it must be that the "'primary motivation or determining factor in [the defendant's] actions has been to injure plaintiffs tortiously.'" *Id.* (quoting *Brown v. Google LLC*, 525 F.Supp.3d 1049, 1067 (N.D. Cal. 2021)).

First, it is important to establish the communications at issue that purportedly were intercepted.  Plaintiff alleges that the intercepted communications "include, but are not limited to, communications to/from Plaintiff and Class Members regarding PII and PHI, certain medical conditions, and testing for such conditions." (Compl. ¶ 231).  Plaintiff alleges that whenever Plaintiff or Class Members "interacted with [Defendant SPD's] website" through the "Tracking Codes embedded and operating on their Website, contemporaneously and intentionally used" the information established by those visits without consent, knowing it was obtained in violation of ECPA. (*Id.* ¶¶ 234-36).  In other words, the very fact of visits to the websites – which could reveal certain medical conditions or sought after testing and might include the visitors' identifying information – are the intercepted communications.

Here, Defendant argues that it is "exempt from liability" because as the owner of the Website, and therefore a party to the communications, it "consented to the

purported interception of communications."[12]  (Mot., Docket No. 44 at 9).  Indeed, Plaintiff concedes that Defendant SPD was a "party to the communications" that were allegedly intercepted.  (Compl. ¶ 247).  Plaintiff argues, however, that the Party Exemption is unavailable due to the Crime-Tort Exception; more specifically, she alleges that the interceptions amounted to violations of CIPA and HIPAA, as well as invasion of privacy.  (Opp'n to Mot., Docket No. 50 at 13-17).  Defendant argues that Plaintiff has not "plausibly alleged a violation of HIPAA, CIPA or the common law[,]" and the failure to allege another violation of law "dooms its ECPA claim." (Reply at 3).  The Court agrees with Defendant for the reasons explained below.

First, Defendant argues that "Plaintiff cannot state a claim for a HIPAA violation against [Defendant SPD]" as it is not a "covered entity" within the meaning of the statute.  *See* 45 C.F.R. § 160.102; (Mot. at 13).  Where Defendant SPD cannot violate HIPAA as a matter of law, this alleged violation cannot serve as the basis for the Crime-Tort Exception to apply.  The Plaintiff has not presented case law to demonstrate that, in the case of an entity not subjected to HIPAA, a hypothetical violation would be sufficient to invoke the Crime-Tort Exception.  Nor is the Court aware of any.

With respect to the tort of invasion of privacy, the Court has already found that Plaintiff failed to sufficiently state a claim for intrusion upon seclusion.  This, therefore, cannot serve as the basis for the Crime-Tort Exception to apply.  Plaintiff cites to cases in which the plaintiff had sufficiently stated a claim for invasion of privacy, and, accordingly, those cases are inapposite.  (*See* Opp'n to Mot. at 13); *see R.C. v. Walgreens*, 733 F.Supp.3d 876, 901-02 (C.D. Cal. 2024) (holding that where

---

[12] As Plaintiff's argument focuses only on whether the Crime-Tort Exception is applicable – such that the Party Exemption is unavailable – the Court considers the issue of whether the Party Exemption applies to Defendant SPD conceded.  *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F.Supp.2d at 1132; *see also Kroeger*, 2020 WL 3546086, at *8 (collecting cases holding that party conceded argument by failing to address it in opposition brief).

plaintiffs stated a claim for invasion of privacy, this was sufficient to plead the defendant's tortious intent for purposes of the Crime-Tort Exception); *Desert Care Network*, 2024 WL 1343305, at *5 (denying motion to dismiss ECPA claim where sufficiently alleged invasion of privacy tort for purposes of Crime-Tort Exception); *Brown*, 525 F.Supp.3d at 1067 (finding sufficient allegations of violations of state law, including common law invasion of privacy, to apply the Crime-Tort Exception).

Finally, with respect to CIPA, Defendant argues that Plaintiff cannot contend that "the alleged conduct constituting its state wiretap claim, CIPA, is separate and independent from its federal wiretap claim, ECPA."  (Reply at 4).  The Court agrees with Defendant SPD.  The requirement that the alleged criminal or tortious purpose is "independent of the interception itself" is not met when an alleged CIPA violation serves to invoke the Crime-Tort Exception of ECPA.  *See, In re Google Inc. Cookie Placement Privacy Litigation*, 806 F.3d at 145 (emphasizing that the Crime-Tort Exception is not triggered when the tortious conduct is the alleged wiretapping itself).  Allowing plaintiffs to bootstrap an alleged CIPA violation to invoke the Crime-Tort Exception in ECPA – or vice versa – would allow the exception to swallow the rule.  *See Heerde v. Learfield Communications, LLC*, 741 F.Supp.3d 849, 865 (C.D. Cal. 2024) (emphasizing that the analysis for a violation of CIPA is the same as that under ECPA, demonstrating the close connection between the two statutes).

Where the Party Exemption is applicable and the plaintiff has failed to sufficiently invoke the Crime-Tort Exception, the defendant is exempt.  *See* 18 U.S.C. § 2511(2)(d).  Therefore, Defendant SPD is exempt from liability under ECPA.  *See, e.g., Kurowski*, 659 F.Supp.3d at 938; *B.K. v. Eisenhower Medical Center*, 721 F.Supp.3d 1056, 1061 (C.D. Cal. 2024) (dismissing ECPA claim where defendant installed pixel on its website, finding any alleged interception to not be actionable).

Accordingly, the Court **GRANTS** Defendant SPD's Motion to Dismiss without prejudice, with respect to the first cause of action for a violation of ECPA.  Though

1  the Court harbors doubt about Plaintiff's ability to cure the defects noted herein, the

2  Court **GRANTS** leave to amend in the event that she can.

3            *4. Fourth Cause of Action for Unjust Enrichment*

4        Under California law, there is no independent cause of action for unjust

5  enrichment.  *City of Oakland v. The Oakland Raiders*, 83 Cal.App.5th 458, 477

6  (2022).  California courts may treat unjust enrichment claims as a quasi-contract claim

7  seeking restitution.  *Hill v. Roll Int'l Corp.*, 195 Cal.App.4th 1295, 1307 (2011).  A

8  plaintiff "must establish that she lacks an adequate remedy at law before securing

9  equitable restitution."  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir.

10  2020); *see also Chiulli v. Am. Honda Motor Co.*, 690 F.Supp.3d 1038, 1062 (N.D.

11  Cal. 2023) (dismissing unjust enrichment claim for failure to plausibly allege

12  inadequate remedy at law).

13        Plaintiff argues that she and her Class Members' allegedly disclosed "health

14  information" holds "particularly high value," and that this monetary benefit was

15  "conferred upon Defendant by Plaintiff and the Class."  (Opp'n to Mot. at 18).  She

16  seeks that Defendant be "compelled to disgorge into a common fund for the benefit of

17  Plaintiff and Class Members all unlawful or inequitable proceeds they received as a

18  result of its conduct alleged herein."  (Compl. ¶ 292).

19        Defendant argues that Plaintiff failed to establish that a remedy at law would be

20  inadequate.  (Mot. at 28).  Plaintiff did not address this argument directly.[13]  The

21  Court, therefore, considers this issue conceded.  *See Stichting Pensioenfonds ABP v.*

22  *Countrywide Fin. Corp.*, 802 F.Supp.2d at 1132; *see also Kroeger*, 2020 WL

23

24  [13] Further, as Defendant highlights, in the cases cited to by Plaintiffs, inadequate legal
    remedies had been sufficiently alleged to survive a motion to dismiss.  (Reply at 17);
25  s*ee, e.g., C.M. v. MarinHealth Med. Grp., Inc.*, 2024 WL 217841, at *6 (N.D. Cal.
    Jan. 19, 2024) (analyzing whether "plaintiff has alleged insufficient remedies as a
26  matter of law"); *Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1086 (N.D. Cal.
    2023) (emphasizing that the plaintiffs had alleged that their remedies at law are
27  inadequate); *see also Fullstory*, 712 F.Supp.3d at 1253 (adopting analysis in *Doe v.*
    *Meta* with respect to unjust enrichment claims).

28

3546086, at *8 (collecting cases holding that party conceded argument by failing to address it in opposition brief).

Moreover, where there is no "actionable wrong," as currently alleged here, there can be "no basis for relief." *Hill*, 195 Cal.App.4th at 1307.  In all the cases cited to by Plaintiff demonstrating the propriety of an unjust enrichment claim in similar contexts, the plaintiffs had sufficiently stated claims for other underlying causes of action – most notably, data breaches, which are not at issue here.  *See Fraley v. Facebook, Inc.*, 830 F.Supp.2d 785, 815 (N.D. Cal. 2011) (emphasizing that plaintiffs "pled causes of action that give rise to restitution as a remedy . . ."); *see In re Anthem Inc. Data Breach Litig.*, 2016 WL 3029783, at *14 (N.D. Cal. May 27, 2016) (declining to dismiss unjust enrichment claim where plaintiffs sufficiently pled "wrongful acts"); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *13-14) (N.D. Cal. Aug. 30, 2017) (declining to dismiss restitution claim where plaintiffs had sufficiently alleged a UCL violation).

For the reasons explained herein, the Court **GRANTS** Defendant SPD's Motion to Dismiss without prejudice, with respect to the fourth cause of action.  In the event that Plaintiff can cure the noted deficiencies, the Court **GRANTS** leave to amend.

## III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant SPD's Motion to Dismiss, such that the action in its entirety is dismissed without prejudice.  The Court **GRANTS** Plaintiff leave to amend and **ORDERS** any amended complaint to be filed within twenty-one (21) days.


**IT IS SO ORDERED.**


Dated:  February 27, 2025

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE

28